and the reply affidavit of Joseph Termini sworn to on October 3, 2001 and it appearing to my satisfaction that:

1. Frontier was incorporated in New York as a stock property/casualty insurer on November 2, 1962 and commenced business on August 17, 1966;

2. Frontier's principal place of business is located at 195 Lake Louise Marie Road, Rock Hill, New York in Sullivan County. Frontier's tax ID number is 13-2559805;

3. Frontier is subject to the New York Insurance Law and particularly to article 74 thereof;

4. Frontier is insolvent;

5. Frontier has failed to cure its impairment of capital or minimum surplus to policyholders;

6. Frontier has consented to the entry of the order of rehabilitation; and

7. It is in the best interest of Frontiers's policyholders, creditors and the general public that the Superintendent be directed to take possession of Frontier's property and to rehabilitate its business and affairs;

And, the Petitioner, having appeared by the Hon. Eliot Spitzer, Attorney General of the State of New York; and due deliberation having been had;

NOW, on motion of Hon. Eliot Spitzer, Attorney General of the State of New York, it is ORDERED as follows:

1. The petition is granted and the cross-motion is withdrawn;

2. Gregory V. Serio, Superintendent, and his successors in office as Superintendent, is appointed Rehabilitator of Frontier and is authorized and directed to immediately take possession of its property, conduct its business, including but not limited to settling claims within his sole discretion, take such steps toward the removal of the causes and conditions which made this proceeding necessary as he shall deem wise and expedient, and deal with the property and business of Frontier in its name or in the name of the Superintendent as Rehabilitator;

2

3. Notice to all persons having claims against Frontier to file or present their claims to the Superintendent as Rehabilitator is deferred until further order of this court;

4. Frontier, its officers, directors, depositories, trustees, agents, servants, employees, and all other persons, having any property or records belonging or relating to Frontier, including, but not limited to insurance policy, loss claim and legal files are directed, upon request of the Superintendent as Rehabilitator to assign, transfer, set over and deliver to him all such property or records;

5. Any persons, firms, corporations, or associations having any books, papers or records relating to the business of Frontier shall preserve them and submit them to the Superintendent as Rehabilitator for examination and copying at all reasonable times;

6. All persons including, but not limited to the officers, directors, shareholders, trustees, agents, servants, employees, attorneys, and managers of Frontier, are enjoined and restrained from the transaction of Frontier's business, the waste or disposition of its property, interfering with the Superintendent as Rehabilitator in the possession, control and management of Frontier's property or in the discharge of his duties;

7. All persons are enjoined and restrained from commencing or prosecuting any actions, lawsuits, or proceedings against Frontier, or the Superintendent as Rehabilitator;

8. All persons are enjoined and restrained from obtaining preferences, judgments, attachments or other liens or making any levy against Frontier's assets or any part thereof.

9. All parties to actions, lawsuits, and special or other proceedings in which Frontier is obligated to defend a party pursuant to an insurance policy, bond, contract or otherwise are enjoined and restrained from proceeding with any discovery, court conferences including but not limited to pre-trial conference, trial, application for judgment or proceedings on settlements or judgments for a period of one hundred and eighty days from the date of entry of this order.

10. Those persons who may have first-party or New York Comprehensive Automobile Insurance Reparations Act (No-Fault) policyholder loss claims against Frontier coming within the purview of Article 76 of the Insurance Law are enjoined from presenting and filing such claims in this proceeding for 90 days from the date of entry of this order.

3

11. In addition to the powers enumerated above and those delegated to the Rehabilitator in the New York Insurance Law, the Rehabilitator, by Order to Show Cause on notice to interested parties, including without limitation Frontier's sole shareholder, and subject to court approval, may sell or otherwise dispose of all or any part of the real and personal property of Frontier, sell any line of insurance, and take such other actions as set forth in Section 7428 of the New York Insurance Law.

12. That the Superintendent of Insurance, as Rehabilitator, may at any time make further application at the foot of this Order to this Court for such further and different relief as he sees fit.

13. All further papers in this proceeding shall bear the caption:

In the Matter of

The Rehabilitation of

FRONTIER INSURANCE COMPANY

E N T E R

_____
J.S.C.

RehOrder 1

F I L E D
OCT 15 2001
NEW YORK
COUNTY CLERKS OFFICE

4

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: Hon. _EDWARD H. LEHNER_____    PART __19__
                                                    Justice

_Gregory V. Serio_____    INDEX NO. _405090/01_

                                      MOTION DATE _____

              - v -                   MOTION SEQ. NO. _001_

_Frontier Insurance Co._____   MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

                                                    PAPERS NUMBERED

Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ...    |_____

Answering Affidavits — Exhibits _____    |_____

Replying Affidavits _____    |_____

Cross-Motion:  ☐ Yes  ☐ No

Upon the foregoing papers, it is ordered that this motion _by petitioner_
_for an order of rehabilitation_
_is granted per decision on_
_record (aft. date._
      _Order signed._

                                    FILED
                                    OCT 15 2001
                                    NEW YORK
                                    COUNTY CLERKS OFFICE

MOTION/CASE IS RESPECTFULLY REFERRED TO                JUSTICE

Dated: ____OCT 1 0 2001_____    _____ J.S.C.

ENDORSEMENT #2

to the

AGGREGATE REINSURANCE AGREEMENT

and

ADMINISTRATION AGREMENT
among

FRONTIER INSURANCE COMPANY
in Rehabilitation
and

NATIONAL INDEMNITY COMPANY,
Omaha, Nebraska

and

NATIONAL LIABILITY & FIRE INSURANCE COMPANY,
Stamford, Connecticut

WHEREAS, Frontier Insurance Company (the "Reinsured") and National Indemnity Company (the "Reinsurer") have entered into an Aggregate Reinsurance Agreement effective July 1, 2000 (the "Reinsurance Agreement") concerning "Covered Liabilities" as defined in the Reinsurance Agreement and whereas, as part of the the Reinsurance Agreement, the Reinsured and National Liability & Fire Insurance Company (the "Administrator") entered into an Administration Agreement concerning the Covered Liabilities;

WHEREAS, the parties modified the Reinsurance Agreement as set forth in Endorsement No. 1 to the Reinsurance Agreement;

WHEREAS, the Reinsured is now under the control of its Rehabilitator, who represents and warrants that it has all necessary authority and power to bind the Reinsured and the New York State Department of Insurance Liquidation Bureau to this Endorsement; and

WHEREAS, in consideration of their mutual promises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Rehabilitator and Reinsurer have mutually agreed to amend, modify or otherwise revise the Reinsurance Agreement and the Administration Agreement, on an interim basis and subject to the ongoing approval of both the Rehabilitator and the Reinsurer in order to promote the orderly rehabilitation of the Reinsured, in the manner set out below;

NOW, THEREFORE, the parties agree as follows:

1.   The Rehabilitator shall seek an order from the Supreme Court of the State of New York staying all actions against the Reinsured and staying all actions in which the Reinsured is obligated to defend a party for 180 days from entry of the order. The Rehabilitator will seek further stays following that period if appropriate given the Reinsured's circumstances and the circumstances of the rehabilitation.

2.   The Administrator will assist in the management of the Reinsured's administration, including claims negotiation and reinsurance collection, other than any business for which Clarendon National Insurance Company or its related parties ("Clarendon") has a direct or cut-through obligation to any insured or cedent of the Reinsured ("Clarendon Business"). The principal administration efforts will be conducted out of the Reinsured's offices. The Rehabilitator authorizes the Administrator to compromise, settle, on a 100% basis, all non-Clarendon business of the Reinsured, including all non-Clarendon unallocated loss adjustment expenses ("ULAE") of the Reinsured, commencing immediately, with the exception of bond obligations which are accelerated due to the Reinsured's rehabilitation or failure of the Reinsured to continue to qualify as an authorized insurer or surety and any assumed reinsurance. All loss and allocated loss adjustment expense ("ALAE") paid by the Reinsurer which

2

is not due or then payable by the Reinsurer under its existing reinsurance obligations to the Reinsured constitutes a loan by the Reinsurer to the Reinsured which will carry interest at the prime rate. This loan includes both the reinsurance due (whether collectible or not) on business currently reinsured by the Reinsurer under the Reinsurance Agreement and business not currently reinsured by the Reinsurer, but does not include Clarendon Business.

3.   The Reinsurance Agreement currently includes ULAE on business covered thereunder as part of the cover's aggregate limit. With respect to ULAE to be paid by the Reinsurer under this Endorsement, the parties hereby agree that 40% of payments made by the Reinsurer at this time constitute "loan" and 60% be constitute loss subject to the aggregate limit under the Reinsurance Agreement. In addition, the Reinsurer will loan the Reinsured funds needed for non-ULAE operational expenses approved by the Reinsurer, under the same terms and conditions provided herein. The percentage allocation of the ULAE as expressed above shall be subject to ongoing revision by the parties should they determine that a different allocation is appropriate.

4.   The Administrator will account for and track, commencing immediately, that portion of funds paid by the Reinsurer which are attributable to the Reinsurer's existing reinsurance obligations, and that portion of funds paid which constitutes the loan. The Reinsurer and the Rehabilitator each has the right unilaterally to cease this arrangement at any time. Once ceased, all loan sums and accrued interest owed to the Reinsurer will be immediately offset against the Reinsurer's remaining reinsurance obligations to the Reinsured. The Reinsured and the Rehabilitator individually and collectively agree to this method of loan and repayment and the Rehabilitator deems such loan to be an administrative expense of the Rehabilitation proceeding.

5.   As part of the Administrator's duties, it will administer the collection of all third-party reinsurance, other than the Clarendon Business, owed to the Reinsured. The Rehabilitator hereby grants the right to collect and pursue, by arbitration or litigation if necessary, all reinsurance due the Reinsured and to compromise and settle all individual reinsurance billings as appropriate. The Administrator will not commute any reinsurance agreements without obtaining the Rehabilitator's specific prior approval. All collected sums will be applied to reduce the outstanding loan amount, plus interest, due the Reinsurer as they are collected.

6.   Consistent with Article 12 of the Reinsurance Agreement, "Insolvency of the Reinsured," all reinsurance payments made by the Reinsurer during the rehabilitation of the Reinsured shall be made directly to the Rehabilitator, which shall make payments with such funds. The

3

Administrator and Reinsurer shall make no payments not within the terms of Article 12 or without the approval of the Rehabilitator.

7.  All other terms and conditions of the Reinsurance Agreement and the Administration Agreement remain unchanged to the extent not inconsistent with the foregoing. Should the arrangement set out herein be terminated by either the Reinsurer or the Rehabilitator, any terms and conditions not modified by the foregoing shall have full force and effect, provided that the Reinsurer's remaining obligations shall be offset by sums owing to the Reinsurer or Administrator as set forth above.

8.  Under no circumstances, howsoever arising, shall anything herein be construed to expand or enlarge the Reinsurer's aggregate limit, inclusive of all expenses and costs, under the Reinsurance Agreement. Reinsurer shall be liable for no sums in excess of the limit, including sums paid both before and after the effective date of this Endorsement.

9.  This Endorsement constitutes a valid and enforceable amendment of the Reinsurance Agreement as provided for in Article 11.

10. Notwithstanding anything herein to the contrary, the Reinsured and Rehabilitator individually and collectively agree that ultimate authority for the settlement of claims and collection of reinsurance shall remain with the Rehabilitator.

11. The signatories hereto warrant and represent that they have full authority to execute this document on behalf of the respective entities.

IN WITNESS WHEREOF, the parties have executed this Endorsement by their duly authorized representatives.

4

FRONTIER INSURANCE COMPANY,
By its Rehabilitator

NATIONAL INDEMNITY COMPANY

By: _____

By: _____

Date: Sept. 20, 2001

Date Sept 20 2001

NATIONAL LIABILITY & FIRE INSURANCE COMPANY

By: _____

Date: Sept 2, 2001

A ccreques Rehu. Agren. Frontier/TD/ngh

5

ENDORSEMENT NO. 3

to the

AGGREGATE REINSURANCE AGREEMENT

Between

FRONTIER INSURANCE COMPANY (IN REHABILITATION)

Rock Hill, New York

And

NATIONAL INDEMNITY COMPANY,

Omaha, Nebraska

WHEREAS, the Frontier Insurance Company in Rehabilitation (the "Reinsured") and National Indemnity Company (the "Reinsurer") have entered into an Aggregate Reinsurance Agreement effective July 1, 2000 (the "Reinsurance Agreement") concerning "Covered Liabilities" as defined in the Reinsurance Agreement and arising under Accident Years 1999 and prior;

WHEREAS, in connection with the Reinsurance Agreement, the parties also entered into an Administration Agreement among themselves and National Liability & Fire Insurance Company (the "Administration Agreement");

WHEREAS, the parties mutually amended the terms of the Reinsurance Agreement as reflected in Endorsement Nos. 1 and Endorsement No. 2 to the Reinsurance Agreement;

WHEREAS, the parties also entered into a Novation Agreement effective July 1, 2000 concerning an Aggregate Excess of Loss Reinsurance Agreement effective January 1, 1998 and a Coinsured Aggregate Excess of Loss Agreement Effective January 1, 1995 (the "Centre Re Agreements"). The liabilities covered in the Reinsurance Agreement and/or the Centre Re Agreements are referred to herein as the "Covered Liabilities" and/or "Covered Business;"

WHEREAS, the Reinsured and the Reinsurer ( or the "parties") have agreed to amend and modify the foregoing agreements and arrangements, effective January 1, 2004 and as more fully set forth herein; and

1

WHEREAS, as a result of the foregoing, the Reinsured and the Reinsurer have mutually agreed to set forth in this Endorsement No. 3 the terms and conditions of the parties' agreement and that the Reinsurance Agreement and other above-referenced agreements shall be mutually deemed modified to the extent inconsistent with the agreements and statements contained herein;

NOW THEREFORE, in consideration of the mutual promises and releases set out herein and for other good and valuable consideration, the Reinsured and the Reinsurer agree as follows:

1.  As a condition precedent to the other modifications and agreements set out herein, the Reinsurer and Reinsured agree to expeditiously reconcile their account balances and remaining obligations under the existing reinsurance agreements and arrangements as of December 31, 2003. The reconciliation shall be performed consistent with the terms of the agreements and prior agreed upon practices. Upon their mutual agreement to the pertinent reconciled balances, the parties shall so stipulate to such balances and include such stipulation in the presentation of this Endorsement number 3 to the Rehabilitation Court for approval of this Endorsement. Such stipulation shall set forth the total net sum due to NICO, including accrued interest, arising from the Reinsurance Agreement as amended, the funds held under the Centre Re novation, the Administration Agreement and any other sums (the "NICO Balance").

2.  Effective January 1, 2004, the Reinsurer shall have no further obligation or liability whatsoever with respect to the Reinsured's surety business, including but not limited to indemnity sums, allocated or unallocated expense or other costs, under the Reinsurance Agreement or otherwise. The "Covered Business" and "Covered Liabilities" shall not include the Reinsured's surety business. Frontier's surety bond claims will not be reinsured under the Reinsurance Agreement. Any amounts paid by Reinsurer after December 31, 2003, on surety claims shall be included as an offset under Paragraph 7 hereto against obligations of NICO.

3.  Effective January 1, 2004, the Reinsured shall have no obligation to pay surety premium earned after December 31, 2003 to the Reinsurer.

4.  The Reinsured shall keep all surety subrogation collected after December 31, 2003.

5.  The Reinsurer shall have no administrative rights or obligations with respect to the handling of surety claims or the collection of reinsurance after December 31, 2003. The Reinsurer's administrative rights with respect to the non-surety business shall continue without change. In accordance with the foregoing, paragraph 5 of Endorsement No. 2 to the Reinsurance Agreement is hereby deleted.

6.  Effective January 1, 2004, there shall be an aggregate going-forward sub-limit of "Reinsurer's obligations in respect of ULAE" in the amount of $15 million. Subject to and without waiver of this aggregate sub-limit,

2

Reinsurer shall have no liability for any ULAE paid by Reinsured in respect of calendar year 2004 greater than $4.5 million (the "2004 ULAE sublimit"). In each successive calendar year, Reinsurer's sub-limit in respect of ULAE for such year shall be reduced by $500,000 from the previous year's sublimit ( for example, Reinsurer's "2005 ULAE sublimit" shall be $4 million). The amount of "Reinsurer's obligations in respect of ULAE" shall be mutually agreed based upon that portion of the claims activity that are "Covered Liabilities" related to all claims activity.

7.    Ten days following approval of this agreement by the Rehabilitation Court in a final, non-appealable order, the Reinsurer shall pay the sum of $50 million to the Reinsured. The Reinsurer's obligation to pay $50 million shall be reduced by the sum of all payments made by the Reinsurer after December 31, 2003 in excess of the Reinsurer's contractual obligations after December 31, 2003 pursuant to the Reinsurance Agreement as amended in this Endorsement No. 3. In addition thereto, Reinsurer shall pay accrued interest on the $50 million sum at the same rate of 6% that has been agreed to apply to sums loaned by NICO to Frontier under Endorsement No. 2, such interest to accrue on the net amount of the $50 million owed to Frontier as of the date of final approval of this Endorsement No. 3 from January 1, 2004.

8.    With effect from December 31, 2003, the Reinsurer releases the Reinsured from any and all obligation or liability with respect to repayment of $140 million of the NICO Balance. To the extent that the NICO Balance is greater than $140 million, the Reinsured shall pay to the Reinsurer that amount by which the NICO Balance exceeds $140 million. Conversely, to the extent that the NICO Balance is less than $140 million, the Reinsurer shall pay to the Reinsured that amount by which $140 million exceeds the NICO Balance. Payment shall be made ten days following entry of a final, non-appealable order approving this Agreement of the Rehabilitation Court.

9.    With respect to the Centre Re Funds Held balance at December 31, 2003, the Reinsurer agrees not to collect this amount from Frontier as part of the $140 million of NICO Balance forgiveness referenced above, effective January 1, 2004. The Reinsurer agrees that it may only collect the remaining funds held balance from the other participants to the Centre Re Reinsurance Agreements and the Novation. In addition, Reinsurer shall abide by Reinsured's decision as to whether or not to relieve Frontier Pacific Insurance Company ("FPIC") from its obligations in respect of the funds held balance under the Centre Re Reinsurance Agreements and Novation.

10.   Effective January 1, 2004, with respect to claims payments previously made and claims payments made thereafter, the Reinsurance Agreement shall be treated as other reinsurance inuring to the benefit of the Aggregate Excess of Loss Agreement Effective January 1, 1998.

11.   Effective January 1, 2004, the Reinsurer shall have no obligation to the Reinsured with respect to the Centre Re Agreements and Novation.

3

12.  Effective January 1, 2004, the Reinsurer's remaining aggregate limit of liability under the Reinsurance Agreement shall be Ultimate Net Loss $225 million. Under no circumstances howsoever arising shall Reinsurer be liable to pay any sum greater than Ultimate Net Loss $225 million by reason of entering into the Reinsurance Agreement and the related arrangements above-referenced, as amended, after January 1, 2004. This aggregate limit of liability includes all sums due any reinsured under the Reinsurance Agreement, including Frontier Pacific Insurance Company ("FPIC"). The Reinsured and FPIC shall mutually confirm to Reinsurer their agreement as to respective sub-limits for each within the Reinsurer's $225 million aggregate limit.   Frontier and FPIC have the right to jointly reallocate the sub-limit from one entity to the other as needed provided they jointly confirm such agreement to the Reinsurer in writing prior to such revised respective sub-limits taking effect. In any case, the Reinsured and the Reinsurer mutually agree and acknowledge that Reinsurer shall not be obligated to make any payments under the Reinsurance Agreement in excess of the $225 million aggregate limit, and in the absence of mutual agreement as to FPIC's sub-limit, Reinsurer shall be entitled to protect itself from risking overpayment, either by offset or otherwise.

13.  The Reinsured shall release the Reinsurer from any and all claims related to the reinsurance in effect on December 31, 2003 except for the amended obligations as set forth in this Endorsement 3.

14.  The Reinsured shall hold the Reinsurer and Administrator harmless and indemnify the Reinsurer and Administrator against any claims of third parties in respect of sums that would otherwise be recoverable under the reinsurance and the Administrative Agreement and this amendment of the reinsurance and Administrative Agreement, but this hold harmless and indemnification obligation shall not extend to claims against the Reinsurer or Administrator as tortfeasors.

15.  The Reinsurer retains its right of immediate offset to its reinsurance obligations consistent with prior practice should the Reinsurer make a payment in excess of its obligations under the Reinsurance Agreement, as amended, or otherwise have an off-settable claim against the Reinsured. For example, if the NICO balances total $10 million, Frontier has paid $15 million in covered liabilities and the remaining reinsurance limit is $100 million, then NICO first offsets the $10 million balance against its reinsurance obligation of $15 million, and in that instance NICO must pay $5 million and the remaining limit will be $85 million.

16.  Endorsement No. 2 to the Reinsurance Agreement is modified such that Reinsurer may, but shall not be obligated to, make any loan to Reinsured.

All other terms and conditions of the Reinsurance Agreement and Administrative Agreement remain unchanged to the extent not inconsistent with the foregoing. Any terms and conditions not modified by the foregoing shall have full force

4

and effect, provided that each party's continued obligations may be offset by sums owing to the other party, occasioned by the assumption by one party of liability transferred to the other party hereunder.

This Endorsement constitutes a valid and enforceable amendment of the Reinsurance Agreement as provided for in Article 11 of the Reinsurance Agreement.

The signatories hereto warrant and represent that they have full authority to execute this document on behalf of the respective entities.

IN WITNESS WHEREOF, the parties have executed this Endorsement by their duly authorized representatives

FRONTIER INSURANCE COMPANY IN REHABILITATION

By: James P. O'Connor, Special Deputy
New York State Insurance Department Liquidation Bureau
As Rehabilitator for Frontier

NATIONAL INDEMNITY COMPANY

By:

NATIONAL LIABILITY & FIRE INSURANCE COMPANY

By:

5

*Handed out at Court Conference by FICR - 12/14/04*

## NICO TREATY

**Cash Paid NICO:**

| | | |
|---|---|---:|
| Original Premiums and Fees: | | |
| | Original Premium | 490,000,000 |
| | Option Fee | 15,000,000 |
| | Other Fee | 100,000 |
| | | |
| Endorsement #1 Premium and Fees: | | |
| | Settle Ceded Reinsurance Issue | 6,697,000 |
| | FIC Surety Premiums Earned Paid | 31,464,476 |
| | | |
| Total Cash Paid NICO | | 543,261,476 |
| | | |
| | | |
| Ceded Paid Losses by NICO | | 382,961,220 |
| | | |
| Net Cash Held By NICO | | 160,300,256 |

**LIMIT REMAINING:**

| | |
|---|---:|
| Original Limit | 811,464,476 |
| Additional Surety Limit | 44,874,350 |
| Revised Limit | 856,338,826 |
| | |
| Ceded Paid Losses by NICO | 382,961,220 |
| | |
| LIMIT REMAINING | 473,377,606 |
| | |
| ENDORSEMENT # 3  AGGREGATE | 225,000,000 |
| | |
| LIMIT GIVEN UP | 248,377,606 |
| | |
| LOAN FORGIVEN | 145,027,068 |
| NICO CASH TO FIC | 45,000,000 |
| TOTAL COMPENSATION TO FIC | 190,027,068 |
| | |
| LIMIT BENEFIT TO NICO | 58,350,538 |
| | |
| INTEREST SAVINGS IN 2004 ESTIMATED | 9,000,000 |
| | |
| NET LIMIT BENEFIT TO NICO | 49,350,538 |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SULLIVAN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :

In the Matter of                         :    Index No.: 1357/03

the Rehabilitation of               :

FRONTIER INSURANCE COMPANY   :    PETITION
                                  :

                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        JAMES P. O'CONNOR, Special Deputy Superintendent of Insurance and

Agent of GREGORY V. SERIO, Superintendent of Insurance of the State of New York as

Rehabilitator (the "Rehabilitator") of Frontier Insurance Company ("Frontier") hereby

petitions this court, for an order, pursuant to N.Y. Insurance Law §§ 7428 and 7429, ratifying

and approving the Rehabilitator's transactions with National Indemnity Company ("NICO")

as described herein and avers upon information and belief:

        1.      By order (the "Rehabilitation Order") entered October 15, 2001,

Frontier, a New York domiciled stock property/casualty insurer, was adjudged insolvent and

placed into rehabilitation.  A copy of the Rehabilitation Order is annexed hereto as Exhibit

"A".[1]

        2.      The Rehabilitation Order appointed the Superintendent of Insurance

Gregory V. Serio and his successors in office as Rehabilitator.

        3.      The Rehabilitation Order charged the Rehabilitator with, among other

things, responsibility for:

---

[1]    The Rehabilitation Order followed a Temporary Rehabilitation Order that had been entered
August 27, 2001.

a. taking possession of the Company's property and assets;

b. conducting its business;

c. taking such steps toward the removal of the causes and conditions which made the rehabilitation proceeding necessary.

4.     The Rehabilitator has previously filed a Report on the Status of the Rehabilitation of Frontier dated October 30, 2002 (the "Report"). The Report summarizes the Rehabilitator's initial efforts to take over and conduct the affairs of Frontier and includes a discussion of Frontier and the Rehabilitator's transactions with NICO up to that point. A copy of the Report (without exhibits) is annexed as Exhibit B.

## THE FRONTIER-NICO AGREEMENTS

5.     Prior to rehabilitation, Frontier's management entered into two reinsurance agreements with NICO. Both agreements were effective as of July 1, 2000. The primary agreement was an Aggregate Reinsurance Agreement whereby NICO reinsured covered liabilities for the years 1999 and prior. Thereafter, Frontier, while still controlled by its former management, entered into a modification of the Aggregate Reinsurance Agreement designated as Endorsement No. 1.

6.     As an adjunct to the Aggregate Reinsurance Agreement, Frontier and NICO also entered into a Novation Agreement concerning certain prior reinsurance agreements that Frontier had entered into with Centre Reinsurance Company ("Centre Re"). The novation substituted NICO for Centre Re as Frontier's insurer.

7.     At the beginning of the Rehabilitation, the Rehabilitator and NICO entered into Endorsement No. 2 to the Aggregate Reinsurance Agreement in order to obtain advances of reinsurance proceeds to address Frontier's cash crisis. Recently, the

2

Rehabilitator and NICO have agreed upon terms set forth in the proposed Endorsement No.

3. As is detailed below, the proposed endorsement entails material changes to the Aggregate

Reinsurance Agreement and resolves entirely Frontier's financial obligations under the

Novation Agreement.

THE AGGREGATE REINSURANCE AGREEMENT

8.     In September 2000, as Frontier's financial condition was deteriorating,

the insurer entered into a retroactive Aggregate Reinsurance Agreement (the "Aggregate

Reinsurance Agreement") with NICO.  Under the agreement, which was effective as of July

1, 2000, Frontier transferred $490 million to NICO and, subject to certain exclusions, NICO

agreed to pay up to $800 million of Frontier's ultimate net loss in relation to covered

liabilities for accident years 1999 and prior.[2]  By transferring more liabilities than assets,

Frontier was able to increase its statutory surplus.  A copy of the Aggregate Reinsurance

Agreement is annexed hereto as Exhibit C.

THE NOVATION AGREEMENT

9.     To fully understand Frontier's relationship with NICO, the Court must

also be aware of a separate transaction involving Centre Reinsurance Company ("Centre

Re").  Years before entering into the Aggregate Reinsurance Agreement, Frontier entered

into a series of reinsurance transactions with Centre Re, pursuant to which Frontier and its

subsidiaries were jointly and severally liable, for accident years 1995, 1996 and 1997.[3]

---

[2]     The term "accident year" refers to the year in which losses occur (as opposed to the year in
which they are reported).

[3]     For accident years 1998 and 1999, Frontier and Centre Re entered into more traditional
reinsurance treaties that provided for fixed premium. The parties later agreed to commute the 1999 treaty.

5

Under the several accident year treaties payment of most of the premium due to Centre Re from Frontier was deferred. The treaties provided a partial cover for losses, subject to certain retentions and co-insurance conditions, effectively leaving the obligation to pay most of the covered losses as the ultimate responsibility of Frontier. As of mid-2000, Centre Re had received premiums of approximately $78 million for the covers provided, with Frontier having the continuing obligation to pay the premium for funds withheld plus an additional amount for accruing interest upon the unpaid premium account balances. Payment of the premiums was not due to Centre Re until claims were incurred and paid, with the parties contemplating that Frontier would actually pay the claims and Centre Re would give a corresponding credit upon claim and LAE payments being made by Frontier for the 1995 through 1997 accident years. The Centre Re premiums to be paid and withheld by Frontier, exclusive of interest, were in excess of $165 million. As long as Frontier had the wherewithal to pay the claims for the 1995 to 1997 years, the Centre Re debt was contingent and illusory in the eyes of Frontier's management.

10.    To facilitate the Aggregate Reinsurance Agreement with NICO, Frontier and Centre Re agreed to novate the Centre Re treaty, substituting NICO as the reinsurer, with Centre Re and NICO agreeing to the financial consideration between them, and with Frontier continuing its original obligation to make premium payments as claims arose while accruing interest upon the unpaid balance. Frontier's primary and ultimate obligation to pay its premium funds withheld as claims were incurred under its Centre Re obligations did not change and were to underlie any aggregate reinsurance with NICO.

4

ENDORSEMENT NO 1
AGGREGATE REINSURANCE AGREEMENT

11.    On or about January 5, 2001, Frontier's management and NICO amended the Aggregate Reinsurance Agreement ("Endorsement No. 1"). Under Endorsement No. 1, Frontier paid an additional $37 million to NICO in consideration of expanded coverage as set forth below. The endorsement also added Frontier's subsidiary, Frontier Pacific Insurance Company ("FPIC"), as a reinsured party. FPIC paid an additional $27 million to NICO. Endorsement No. 1 raised the aggregate limit from $800 million to $858 million (plus further increases as particularized below), including a separate sublimit of $47 million for coverage of FPIC.

12.    Endorsement No. 1 expanded the business covered by the Aggregate Reinsurance Agreement to include surety business (other than bail and appellate bonds) for losses occurring after 1999. The endorsement also allocated prospective surety premium to NICO and increased the aggregate limit by one dollar for each dollar of additional surety premium billed by Frontier. Endorsement No. 1 also modified the reinsurance and subrogation rights of NICO to exclude from NICO's account recoveries for losses that were paid by Frontier prior to, or exclusive of, the treaty cover. NICO was entitled to surety subrogation under the endorsement.

13.    Because Frontier had pre-existing excess of loss reinsurance coverage for most of its surety business, NICO's surety obligation was net of all other reinsurance for surety. Frontier retained the credit risk for collection of proceeds due from its other surety reinsurers. A copy of Endorsement No. 1 is annexed hereto as Exhibit D.

5

14.    So, for example, if Frontier had a surety bond in-force and billed $10,000 of additional premium on that bond after Endorsement No. 1 became effective, then the additional premium was payable to NICO and the limit under the Aggregate Reinsurance Agreement was raised by $10,000. If a $100,000 loss eventuated under the bond and $30,000 of that loss was covered by pre-existing reinsurance, NICO would pay the $70,000 remainder. The credit risk of the other reinsurers not paying their $30,000 share of the loss remained with Frontier. Any subrogation recoveries in respect of that loss would be for the account of NICO and the other reinsurers in accordance with their interests.

## ENDORSEMENT NO 2
## AGGREGATE REINSURANCE AGREEMENT

15.    On May 7, 2001, the Insurance Department found that Frontier's required minimum surplus to policyholders was impaired. Frontier's authority to write new business in New York was suspended and other jurisdictions soon followed suit. On or about July 5, 2001, Frontier submitted its first quarter financial statement, acknowledging that the company was insolvent and that its required minimum surplus was impaired by over $16 million dollars.

16.    During this period, Frontier's management asked Clarendon National Insurance Company ("Clarendon") to release part of the collateral Clarendon held pursuant to a fronting and cut-through arrangement with Frontier and its insurer affiliates. In the view of Frontier's management, the value of the collateral provided by Frontier (a trust account) exceeded the estimated obligations of Frontier and its affiliated insurers by approximately $24 million. The bulk of that surplus was attributable to Frontier. Clarendon maintained that there was no surplus relative to the projected ultimate net loss on the business falling under

6

the arrangement. On or about July 13, 2001, Clarendon drew down the entire amount of the Trust, some $197 million.

17.    By August 2001, Frontier's cash position deteriorated and it could no longer meet its current obligations. Frontier's management drafted a report of its financial results through June 30, 2001, which reported a negative surplus of over $60 million. Actuarial review by professionals retained by the Department of Insurance determined that Frontier had a negative surplus of over $170 million. A subsequent review of inadmissible assets indicated that the Frontier negative surplus may have actually exceeded $200 million at the time Frontier was placed in Rehabilitation.

18.    On August 27, 2001, the Supreme Court of the State of New York, County of New York, entered a Temporary Rehabilitation Order appointing the Superintendent as temporary Rehabilitator of Frontier. The Rehabilitator determined upon entry into Frontier's offices that its accounts were overdrawn by as much as $10 million with respect to current obligations and claim settlements that had been agreed to with checks processed and ready for delivery.

19.    To operate Frontier, the temporary Rehabilitator offered employment to more than 300 existing employees. The temporary Rehabilitator also entered into negotiations with NICO in order to address the company's cash crisis. Because Frontier's operating expenses and its claims on some lines of business were not covered by the Aggregate Reinsurance Agreement,[ ] Frontier in rehabilitation could not meet its obligations

---

[ ]    Even after Endorsement No. 1, the Aggregate Reinsurance Agreement excluded certain lines of business and, except in relation to the surety business, it did not cover any losses occurring after January 1, 2000.

as they became due. At the October 5, 2001 hearing before Justice Lehner, it was noted that Frontier had limited liquid assets and that it could not settle claims without negotiating a funding arrangement with NICO and/or Clarendon. Justice Lehner directed that the proposed Rehabilitation Order be changed to authorize the Rehabilitator to settle claims in his sole discretion.

        20.     Meanwhile, the temporary Rehabilitator and NICO entered into a further modification of the Aggregate Reinsurance Agreement ("Endorsement No. 2"), modifying that agreement to enable Frontier in rehabilitation to continue operations and fund claims. This arrangement has provided the financial resources, at least in the short term, necessary for the Rehabilitator to pay Frontier claims arising out of policy obligations while in rehabilitation. Instead of just funding claims to the extent of its current obligation under the Aggregate Reinsurance Agreement, NICO agreed to make advance payment of reinsurance proceeds for which it was not yet obligated. In consideration, the temporary Rehabilitator agreed to reduce NICO's ultimate liability under the Aggregate Reinsurance Agreement by an amount equal to the advanced reinsurance proceeds plus a charge for interest. At any time, either NICO or the Rehabilitator can terminate the funding arrangement ordained by Endorsement No. 2, a circumstance that continues to this day. NICO's prerogative to discontinue the advances remains of great concern. If NICO were to terminate the arrangement, its obligation to pay reinsurance will be reduced by the amount of the advanced reinsurance proceeds and accrued "interest". A copy of Endorsement No. 2 is annexed as Exhibit E.

        21.     As noted, the Court issued the current order of Rehabilitation dated October 15, 2001, appointing the Superintendent of Insurance as the Rehabilitator, with a

finding of insolvency. The Court's order permitted the Rehabilitator to settle and pay claims in his sole discretion, with a 180-day stay upon actions brought against Frontier insureds, and an indefinite stay upon actions brought against Frontier itself.

## THE REHABILITATION TO DATE

22.    Almost immediately, the rehabilitation encountered severe problems due to the impending technical defaults on more than $600 million of reclamation and related bonds written in coal mining states. The insolvency and loss of Frontier's credit rating were events of default within the terms of the obligations against which the Frontier bonds had been posted. In the ensuing months, however, the Rehabilitator negotiated terminations of hundreds of millions of dollars of bond exposures, allowing Frontier to be replaced as surety on most but not all of the impacted coal mining and environmental bond exposures.

23.    In 2002, the Rehabilitator also negotiated and completed a settlement with a co-surety upon more than $100 million of exposure, which Frontier substantially reinsured. The settlement broke an impasse with the co-insurer, eliminated almost $50 million of reinsurance obligations, and provided current funding for a 50% share of the co-surety obligation. These actions were also of significant benefit to NICO and allowed the parties to consider that the reinsurance treaty limits were potentially fully available to the estate and its claimants.

24.    Financial and actuarial analysis for year-end 2002 showed that the insolvency that had originally been estimated in excess of $170 million had been reduced to approximately $151 million. By year-end 2003, further progress had reduced the insolvency to approximately $135 million.

9

25.    The Rehabilitator has made a great effort to handle claims proactively, to post accurate ultimate reserves and to fairly resolve, or to allow the judicial process to determine, the value of claims made against Frontier insureds. Claim counts have been significantly reduced, even while a substantial inflow of new claims and cases has occurred. Results have been dramatic in Frontier's medical malpractice lines where for two consecutive years the posted ultimate reserves of cases closed have yielded savings of an average approaching 40%. Frontier is now taking claims it cannot settle to trial much more frequently than it did pre-rehabilitation. For example, medical malpractice cases taken to verdict have yielded defense verdicts more than 90% of the time.

26.    In view of the company's progress, the Rehabilitator has endeavored to find a way to make the Rehabilitation ultimately successful by eliminating Frontier's large debt to NICO occasioned by the pre-rehabilitation Novation Agreement and by the surety premium and credit risk Frontier retained under the Endorsement No.1.

27.    The Rehabilitator estimates that, as of December 31, 2003, the total obligation due to NICO was approximately $145 million dollars, a figure above and beyond the company's negative surplus of $135 million. The amount due to NICO was primarily occasioned by the funds due pursuant to the Novation Agreement and by the surety business endorsement and credit risk retained by Frontier.

28.    As of the initiation of the rehabilitation in August, 2001, the Centre Re obligation under the Novation Agreement, inclusive of interest, was approximately $93 million. The surety premium due to NICO, inclusive of the credit risk retained for surety premium billed but unpaid, and surety reinsurance credited but not received, plus the interest accrued thereon, was approximately $25 million as of December 31, 2003. The two cited

10

items alone occasioned debts totaling $118 million, debts occasioned not by the

Rehabilitator, but solely by the actions of prior management. A copy of the Frontier-NICO

reconciliation is annexed as Exhibit F.

        29.     Accordingly, the Rehabilitator determined that in a negotiation with

National Indemnity, the primary objective of eliminating the amount due should also include

the elimination of treaty conditions that would tend to create further debt, such as the credit

risk for surety premium and reinsurance.

ENDORSEMENT NO 3<br>
AGGREGATE REINSURANCE AGREEMENT

        30.     A protracted negotiation ensued, which crystallized into the proposed

Endorsement No. 3. In its essence, the change in the Aggregate Reinsurance Agreement with

National Indemnity will adjust and fix the parties' future obligations as of December 31,

2003. The outstanding reinsurance cover of National Indemnity will no longer include surety

business, and, in consideration thereof, $140 million of Frontier debt (inclusive of all Centre

Re premium due plus interest accrued) will be commuted and eliminated. The amount of

remaining cover available to Frontier and to Frontier Pacific will be reduced to the total

amount of $225 million, with the Frontier Pacific sublimit remaining intact. Frontier

Insurance Company will receive a payment of up to $50 million in cash, which will be

available for surety reserves and any other losses and cash needs. The precise amount of

cash to be received will be $50 million less the amount of debt to National Indemnity, if any,

that exceeds the $140 million baseline. A copy of Endorsement No. 3 is annexed as Exhibit

G.

        31.     The transaction is not risk free. If losses and loss adjustment expenses

for non-surety business covered by the Aggregate Reinsurance Agreement exceed $225

11

million, there will be no NICO coverage for the excess. Year-end 2003 estimates of reserves for that business exceed $310 million. Nonetheless, the Rehabilitator recommends that Endorsement No. 3 be approved because, if recent settlement discount patterns and effective claims handling practices hold, the ultimate claim costs may fall within the new limit of $225 million.

32.      Frontier is accepting the approximately $50 million in cash to cover the surety exposure that is being ceded back by NICO. That amount will be supplemented by subrogation recoveries that are also being ceded back and by elimination of premium and reinsurance credit risk. The Rehabilitator estimates that the recovery of subrogation and reinsurance on surety could exceed $20 million, and the elimination of the credit risk should eliminate more than $10 million of future debt plus compounding interest. However, there is risk here as well. Substantial surety claims, occasioned by the non-traditional surety underwriting at Frontier, continue to emerge. The Rehabilitator must continue to experience success in the handling of large surety claims to overcome the disturbing pattern of unanticipated large surety claims.

33.      There is no assurance that Frontier has reached the stage where we can predict with certainty that the Rehabilitation will be successful. However, without this proposed transaction, it is readily apparent that the opportunity to resolve with National Indemnity the Centre Re unpaid premium and other obligations due from Frontier will recede and ultimately disappear. There is no realistic way that $140 million of debt would be overcome without this renegotiation and partial commutation of the obligations of the parties. In the exercise of his business judgment, the Rehabilitator respectfully requests that the transactions with NICO be approved by this Court.

## NOTICE

34.    To give notice of this petition, the Rehabilitator respectfully requests that the Court grant the annexed Order to Show Cause, which provides for service of notice by publication in the New York Law Journal and Business Insurance once a week for two consecutive weeks and by regular mail upon: (i) Frontier's parent company, Frontier Insurance Group, Inc.; (ii) those with open claims whose appearances were noted on the record at the hearings held on October 5 and 10, 2001; and (iii) those with open claims who have subsequently appeared in this proceeding.

### REQUEST FOR RELIEF

35.    The Rehabilitator further requests that the Court, following the hearing, issue an order:

      a.    ratifying and approving the Rehabilitator's transactions with National Indemnity as described herein;

      b.    providing such other and further relief as the Court deems just and proper.

Except as set forth herein, no prior application for this or similar relief has been made to this or any other Court.

13

WHEREFORE, Petitioner respectfully requests that the accompanying Order to Show Cause be granted and that a hearing be scheduled sufficiently far in the future for the provision of notice as provided for therein and that, upon the hearing, the Court issue an order granting the relief sought in this petition.

Dated:        New York, New York
              July 7th, 2004

                                    _____
                                    JAMES P. O'CONNOR
                                    Special Deputy Superintendent and
                                    Agent of Gregory V. Serio,
                                    Superintendent of Insurance of the
                                    State of New York as Rehabilitator of
                                    Frontier Insurance Company

14

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK)


JAMES P. O'CONNOR, being duly sworn, deposes and says:


That he has read the foregoing Verified Petition and knows the contents thereof, and that the same is true to his own knowledge except as to the matters therein stated to be alleged upon information and belief, and as to those matters he believes it to be true; that the reason this petition is verified by this deponent rather than by the Superintendent of Insurance is that deponent is the duly appointed Special Deputy Superintendent of Insurance to take possession of the property of and rehabilitate the business of Frontier Insurance Company and as such is acquainted with the facts alleged therein.


Deponent further says that the sources of his information and the grounds of his belief as to the matters stated in said Verified Petition to be alleged upon information and belief are records, books and papers of said company in the possession of the Rehabilitator and communications made to deponent by employees and attorneys of the Rehabilitator.


JAMES P. O'CONNOR

Sworn to before me this
7* day of July, 2004


Notary Public

AMY R. BORODACH
Notary Public, State of New York
No. 01BO4926269
Qualified in Kings County
Commission Expires June 1, 2006

EX. A p146

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SULLIVAN

-  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  x

In the Matter of                                                :        Index No.: 1357/03

the Rehabilitation of                                         :

FRONTIER INSURANCE COMPANY          :        **AFFIDAVIT**

                                                                        :

                                                                        :

                                                                        :

-  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  x

STATE OF NEW YORK)
                                        ss.:
COUNTY OF SULLIVAN)

        RONALD LABENSKI, being duly sworn deposes and says:

        1.     I am the Chief Reinsurance Officer of Frontier Insurance Company

("Frontier"), in Rehabilitation.  Prior to the commencement of this rehabilitation

proceedings, I was the Assistant Controller of Frontier.  I am fully familiar with the facts

set forth below.  I make this affidavit in support of the Rehabilitator's Petition for an

order approving the transactions between Frontier Insurance Company ("Frontier"), in

Rehabilitation and National Indemnity Company ("NICO").

        2.     I am familiar with the Aggregate Reinsurance Agreement between

NICO and Frontier effective July 1, 2000 (the "Aggregate Reinsurance Agreement")

(Petition, Exhibit C), as well as the subsequent endorsements and proposed endorsement

thereto (Petition, Exhibits D, E, and G, respectively) and have been involved with the

administration of Frontier's obligations thereunder since the inception of the Aggregate

Reinsurance Agreement.

      3.     I am also familiar with Frontier's pre-existing arrangement with Centre Reinsurance Company ("Centre Re"), now known as Zurich Reinsurance (North America), Inc., whereby Centre Re reinsured Frontier for underwriting years 1995, 1996, and 1997 and in respect of which Frontier had accumulated a liability for approximately $121 million in unpaid premium and accrued interest, which was accounted for as "funds withheld."[1] As indicated, Frontier's liability accrued interest, but its total obligation was to be reduced over time as Frontier paid from its own funds losses for which Centre Re was otherwise obligated as reinsurer.

      4.     Frontier, NICO, and Centre Re negotiated a novation of the Centre Re Agreement, substituting NICO for Centre Re as Frontier's reinsurer on that business (the "Novation Agreement").

      5.     Like the separate Aggregate Reinsurance Agreement, the Novation Agreement was also effective July 1, 2000. As of year-end 2000, Frontier's liability to NICO in respect of the Novation Agreement amounted to $92,958,755 and that amount was duly reflected on Frontier's Annual Statement at p. 3, line 11. A copy of the relevant portion of Frontier's year-end 2000 Annual Statement is annexed as Exhibit A. At the Rehabilitation date, the funds withheld liability of Frontier and its affiliates, inclusive of interest, amounted to approximately $93 million. Frontier's share amounted to approximately $81 million. Frontier's liability for funds withheld was a significant and acknowledged component of the pre-rehabilitation relationship between Frontier and

---

[1] Centre Re also reinsured Frontier for 1998, but that year's coverage did not involve funds withheld.

NICO.

      6.    I have reviewed the affidavit of Suzanne Loughlin dated August

12, 2004 ("Loughlin Aff.") and refer to ¶ 24, which states: "When FIC was placed into

rehabilitation on August 27, 2001, FIC had no outstanding debts. There was no debt to

NICO/ Center (sic) Re." For the reasons set forth above, that statement is not true.

RONALD LABENSKI

Sworn to before me this
24th day of September 2004

NOTARY PUBLIC

**BARBARA L. RUSTIC**
Notary Public, State of New York
Sullivan County Clerk's # 2298
Commission Expires April 30, 200__

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SULLIVAN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :

In the Matter of                    :    Index No.: 1357/03

the Rehabilitation of            :

FRONTIER INSURANCE COMPANY    :   **AFFIRMATION IN SUPPORT OF**
                                 :   **REHABILITATOR'S MOTION TO**
                                 :   **RENEW AND REARGUE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        H. NEAL CONOLLY, an attorney duly admitted to practice before the

Courts of this State, affirms under penalties of perjury:

        1.    I am the Administrator of Frontier Insurance Company in

Rehabilitation ("Frontier") and I make this affirmation in support of the motion of

Howard Mills, Acting Superintendent of Insurance of the State of New York in his

capacity as Rehabilitator of Frontier Insurance Company (the "Rehabilitator")[1] to renew

and reargue the Rehabilitator's Petition for approval of the proposed Third Endorsement

to Frontier's Aggregate Reinsurance Agreement with National Indemnity Company

("NICO") pursuant to N.Y. Insurance Law §7428.

        2.    The Court received submissions favoring and opposing the

Rehabilitator's Petition and heard oral argument on December 14, 2004. On January 4,

2005 the Court issued its Decision/Order denying the Rehabilitator's Petition on grounds

that it was governed by Justice Lehner's prior ruling that "there is no statutory provision

for confirmation or ratification of interim reports." Justice Lehner's ruling, which was

---

[1]    Mr. Mills has succeeded Gregory V. Serio, the original Rehabilitator in this proceeding.

issued on February 19, 2003, denied the Rehabilitator's prior application for ratification

of a report that, as Justice Lehner observed, set forth "voluminous activities" that the

Rehabilitator had engaged in up to the date of the application.   For the Court's

convenience, copies of the January 4, 2005 Decision/Order and of Justice Lehner's

February 19, 2003 order are annexed as Exhibits A and B, respectively.

### Timeliness of This Motion

3.     The January 4, 2005 Decision/Order has not been served with

notice of entry by any party.  Accordingly, this motion is timely.

### Basis for Reargument/ Renewal

4.     Because the Third Endorsement would, among other things,

relinquish part of Frontier's reinsurance coverage from NICO, it is a disposition of

Frontier's personal property – its contractual right to reinsurance proceeds – that,

according to N.Y. Insurance Law § 7428, cannot be effectuated without the approval of

this Court.  Accordingly, the Court has the jurisdiction to approve or disapprove the Third

Endorsement.  The Rehabilitator respectfully submits that the contrary argument

advanced by Frontier's sole shareholder, Frontier Insurance Group, Inc. ("FIGI"), was

erroneous and that the Court erred in adopting it.

### Urgency of the Rehabilitator's Application/ Basis for Proceeding By Order to Show Cause

5.     This is an urgent matter and the Rehabilitator seeks to proceed by

order to show cause because Frontier is running without sufficient cash.  Without

approval of the Third Endorsement, which will bring an immediate infusion of

approximately $45 million, Frontier faces imminent liquidation.  Since execution of the

Second Endorsement in September 2001, Frontier has functioned under a provisional

2

funding arrangement whereby NICO advanced reinsurance proceeds to Frontier before they became payable under the Aggregate Reinsurance Agreement. However, as elaborated in the Petition, that funding arrangement was terminable by NICO on one-day's notice.[2]  Recently, NICO has restricted Frontier's funding, citing the Rehabilitator's lack of success in obtaining Court approval of the Third Endorsement. *Without the NICO funding, there is no viable prospect of rehabilitation and Frontier will imminently have to be liquidated.*[3]

      6.    In view of the urgency of this application, the Rehabilitator respectfully requests that the Court permit it to be brought on by order to show cause and that the Court set the earliest practicable date for hearing.

### Facts Bearing Upon the Rehabilitator's Motion

      7.    The proposed Third Endorsement features a partial commutation of the Aggregate Reinsurance Agreement, reducing Frontier's reinsurance coverage under the Agreement from a remaining limit of approximately $473 million[4] to $225 million and excluding coverage of surety claims (December 14, 2004 Transcript at 25).   In consideration of the limit reduction and surety exclusion, NICO agrees to expunge an

---

[2]    "NICO's prerogative to discontinue the advances remains of great concern" (Petition at ¶ 20). The point was also addressed at the hearing on the Petition:

> As we stand now, our financing arrangement with NICO is terminable
> on one-day's notice. And at that point the rehabilitation could not go
> forward as a rehabilitation. Liquidation would be the immediate
> consequence.

(December 14, 2004 Transcript at 27.

[3]    "If at any time the superintendent deems further efforts to rehabilitate [the] insurer would be futile, he may apply to the court under this article for an order of liquidation" N.Y. Insurance Law § 7403(c).

[4]    The limit of coverage under the Aggregate Reinsurance Agreement was approximately $856 million, including the additional limit resulting from additional surety premium. As of year-end 2003, NICO

3

approximate $145 million balance in its favor (principally in respect of the separate novation agreement) and to pay approximately $45 million to the Rehabilitator. _Id._

8.    The contractual reduction of Frontier's reinsurance coverage triggers the requirement for judicial approval stated by N.Y. Insurance Law §7428. Because Frontier's contractual right to receive reinsurance proceeds is personal property, the Rehabilitator's proposed disposition of that right – the partial commutation – is a disposition of personal property within the meaning of Insurance Law § 7428 (requiring judicial approval of the Superintendent's proposal to "sell or _otherwise dispose_ of all _or any part_ of the real and _personal property_ of an insurer against whom a proceeding has been brought under [Article 74]") (emphasis supplied).

9.    Though the legal requirement for Court approval is addressed more comprehensively in the accompanying memorandum of law, I do wish to highlight for the Court some factual matters bearing on this motion.

10.    In contrast to the report presented to Justice Lehner for ratification in 2002, the Petition presented to this Court did not seek "ratification" of "voluminous" transactions, but rather sought prior approval of a _single_ transaction – the proposed Third Endorsement to the Aggregate Reinsurance Agreement – which, by its terms, is contingent upon this Court's prior approval. _See_ Third Endorsement at ¶ 1 ("presentation of this Endorsement number 3 to the Rehabilitation Court for approval of this Endorsement"); and ¶ 7 (NICO's payment to Frontier due "[t]en days following approval of this agreement by the Rehabilitation Court in a final, non-appealable order").

---

has already paid over $383 million in respect of ceded paid losses that had come due under the Agreement. That leaves $473 million in remaining limit as of December 31, 2003 (December 14, 2004 Transcript at 25).

4

EX. A p155

11.    Moreover, based upon the course of judicial oversight of this rehabilitation, as well as other insurer receiverships under N.Y. Insurance Law Art. 74, it seems clear that Justice Lehner did not intend his February 19, 2003 ruling as a general renunciation of jurisdiction over reinsurance commutations or other transactions subject to approval pursuant to N.Y. Insurance § 7428. This is best illustrated by Justice Lehner's successive approvals of a series of agreements disposing of Frontier's rights to receive reinsurance proceeds from a Bermuda reinsurer, Platinum Indemnity Limited ("Platinum"). Under separate agreements, Platinum had reinsured Frontier on business originating from various producers.

12.    On April 20, 2003, Justice Lehner granted the Rehabilitator's petition for approval of a commutation of Platinum's agreement to reinsure Frontier in respect of business produced by Dwight Halvorson Insurance Services ("Halvorson"). In consideration of a release of its obligations as reinsurer, Platinum transferred to the Rehabilitator some $2,918,851, comprised by $15,000 cash and an assignment to the Rehabilitator of Platinum's indemnification rights against a Halvorson affiliate, Food Services Insurance Managers ("FSIM").[5] Both the Rehabilitator's Verified Petition and the Order granting it specifically cited § 7428 in their opening paragraphs. Copies of the April 20, 2003 order and of the papers upon which it was granted are annexed as Exhibit C.

13.    On July 18, 2003, Justice Lehner signed an order granting the Rehabilitator's petition for approval of an agreement commuting Platinum's obligations as reinsurer of Frontier on business produced by Risk Management Administrators, Inc.

---

[5]    As part of an arrangement that enabled FSIM to participate in the underwriting results of business produced by its affiliate to Frontier, FSIM invested in the reinsurer and, under a Subscription and Shareholders Agreement, became entitled to receive the profits associated with the business to Platinum and obligated to indemnify Platinum against loss.

5

("RMA") for $4,922. Again, both the Rehabilitator's Verified Petition and the Order granting it specifically cited § 7428 in their opening paragraphs. Copies of the July 30, 2003 order and of the papers upon which it was granted are annexed as Exhibit D.

       14.    On or about July 30, 2003, Justice Lehner issued an order granting the Rehabilitator's petition for approval of another agreement disposing of reinsurance obligations owed by Platinum -- an Assignment and Novation Agreement that transferred Platinum's rights and obligations under certain reinsurance agreements to another Bermuda reinsurer, Landsdowne Insurance Company, Ltd. ("Landsdowne"). Copies of the July 30, 2003 order and of the papers upon which it was granted are annexed as Exhibit E.

       15.    It bears emphasis that each of these §7428 approvals was issued by Justice Lehner *after* his February 19, 2003 order declining to ratify the Rehabilitator's report. I respectfully submit that they reflect Justice Lehner's ongoing willingness to rule upon petitions for approval of *specific transactions* that dispose of Frontier's contractual rights to receive reinsurance proceeds.

       16.    After the Frontier rehabilitation was transferred to this Court, the Rehabilitator presented a petition for approval of a Commutation and Release Agreement with Landsdowne, which provided for commutation of Landsdowne's obligations as reinsurer of Frontier in relation to a Human Dynamics Corporation program. On August 26, 2004, this Court granted the petition. Again, both the Rehabilitator's Verified Petition and the Order granting it specifically cited § 7428 in their opening paragraphs. Copies of the August 26, 2004 order and of the papers upon which it was granted are annexed as Exhibit F.

       17.    Justice Lehner has also granted §7428 petitions involving reinsurance commutations in the estates of *other* insolvent insurers. For example, on January 12, 2004,

6

Justice Lehner approved a petition for approval of a Reinsurance Commutation and Release Agreement between the Liquidator of Cosmopolitan Mutual Insurance Company and the Illinois Special Rehabilitator of American Mutual Reinsurance Company ("AMRECO"). Again, both the Rehabilitator's Verified Petition and the Order granting it specifically cited § 7428 in their opening paragraphs. Copies of the January 12, 2004 order and of the papers upon which it was granted are annexed as Exhibit G.

18.     Other Justices as well routinely rule upon §7428 petitions for approval of reinsurance commutation agreements. *See* Order of Hon. William J. Davis, J.S.C. dated February 2, 2004 (approving Commutation Agreement between the Liquidator of Northumberland General Insurance Company (United States Branch) and Certain Underwriters at Lloyd's for $1,650,000) (Exhibit H hereto); Order of Hon. Ute Lali dated August 19, 2004 (approving Reinsurance Commutation and Release Agreement between the Liquidator of American Fidelity Fire Insurance Company and Inaco Ltd. for $189,946) (Exhibit I hereto); Order of Hon. Michael D. Stallman, J.S.C. dated August 26, 2004 (approving Commutation Agreement between Liquidator of Midland Insurance Company and Uraguayan reinsurer Banco de Seguros del Estado for $77,735) (Exhibit J hereto); Order of Hon. Leland DeGrasse, J.S.C. dated September 7, 2004 (approving Commutation Agreement between Liquidator of Ideal Mutual Insurance Company and Uraguayan reinsurer Banco de Seguros del Estado for $1,672,265) (Exhibit K hereto). These are just examples.

19.     Of the parties that opposed the Rehabilitator's petition in this proceeding, only FIGI made the argument that Justice Lehner's February 2003 ruling constitutes law of the case and bars this Court from exercising its § 7428 jurisdiction. The other objectors urged the Court to disapprove Endorsement No. 3, acknowledging at least

7

implicitly the Court's jurisdiction and responsibility to decide the matter one way or the other. FIGI was not correct to impute to Justice Lehner a disavowal of jurisdiction over transactions falling under §7428. In fact, Justice Lehner's February 2003 ruling was no more than a demurral to the Rehabilitator's application for blanket ratification of the "voluminous" transactions set forth in his report. As evidenced by Justice Lehner's own subsequent approval orders in this proceeding, he clearly did not intend to renounce the Court's statutory jurisdiction to approve or disapprove of specific reinsurance commutations. He approved several of them, as other Justices and, indeed, this Court have routinely done.

20.    Moreover, as is detailed in the accompanying Affidavit of Ronald Labenski, Frontier secures significant financial advantages under the Third Endorsement, including the infusion of $45 million, debt relief in excess of $145 million and avoidance of over $9.5 million of interest accrual in 2004. I respectfully urge the Court to allow Frontier to avoid imminent liquidation, to receive the immediate financial benefits of the Third Endorsement, and, on the foundation of this endorsement, to frame a plan for rehabilitation.

21.    Except as set forth above, no prior application for this or similar relief has been made to this or any other Court.

8

WHEREFORE, the Rehabilitator respectfully requests that the Court issue an order: (i) permitting the Rehabilitator to renew and reargue the Petition for approval of the Third Endorsement and, upon such renewal and reargument, granting the Petition; and (ii) awarding such other and further relief as this Court deems just and appropriate.

Dated:     New York, New York
          April 4, 2005

                         H. NEAL CONOLLY

9

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SULLIVAN

_____

In the Matter of

The Rehabilitation of

FRONTIER INSURANCE COMPANY                    **DECISION/ORDER**

_____

Motion Return Date:   April 28, 2005
RJI No.: 52-22168-0303
Index No.: 1357/0303

APPEARANCES:        Frontier Insurance Company in Rehabilitation
                    195 Lake Louise Marie Road
                    Rock Hill, New York 12775-8000
                    Barton W. Bloom, Esq., of Counsel

                    Costigan & Company, P.C.
                    Attorneys for Howard Mills, Superintendent of Insurance
                      of the State of New York
                    305 Broadway, 7th Floor
                    New York, New York 10007
                    William F. Costigan, Esq., of Counsel

                    Wolf, Block, Schorr & Solis-Cohen, LLP
                    Attorneys for Euler Hermes Kreditversicherungs - AG
                    250 Park Avenue
                    New York, New York 10177
                    William J. Taylor, Esq., of Counsel

                    Anderson Kill & Olick, P.C.
                    Attorneys for Florida Asset Financing Corp., Jurupa Valley Spectrum,
                    LLC, Callon Petroleum Company, AJAS Inc., and DAVAR Inc.
                      [together the "Surety Creditors"]
                    11251 Avenue of the Americas
                    New York, New York 10020-1182
                    Mark Garbowski, Esq., of Counsel

                    Cokinos, Bosien & Young, Esqs.
                    Former Attorneys of Record for Frontier Insurance Company
                    1500 Woodson Tower
                    2919 Allen Parkway
                    Houston, Texas 77019
                    Charles W. Getman, Esq., of Counsel

Frontier Insurance Group, Inc.
146 Rockhill Drive
Rock Hill, New York 12775-7203
Suzanne R. Loughlin, Esq., of Counsel

Stroud & Welch, PLLC
Attorneys for the Special Deputy Receiver for Western Indemnity
    Insurance Company, in Receivership ["WIIC"]
11824 Jollyville Road, Suite 200
Austin, Texas 78759
Rachel Stroud, Esq., of Counsel

Marvin Newberg, Esq.
33 North Street
Monticello, New York 12701
    Of Counsel  to Stroud & Welch, PLLC

CLEMENTE, J:

The petitioner Superintendent of Insurance as Rehabilitator of Frontier Insurance Company [the "Rehabilitator"] moves to renew and reargue his petition seeking an order ratifying and approving the Rehabilitator's transactions with National Indemnity Insurance Company ["NICO"], a Berkshire Hathaway subsidiary.

Opposing the application are the following: the Surety Companies, and Cokinos, Bosien & Young.  Resolution Oversight Company, as Special Deputy Receiver for WIIC, has withdrawn its objection to the Rehabilitator's motion.  Frontier Insurance Group, Inc. ["FIGI"]has withdrawn its objection based on Western Indemnity's withdrawal.

**History**

Prior to rehabilitation, Frontier's management entered into two reinsurance agreements with NICO which became effective July 1, 2000.  The primary agreement was an aggregate reinsurance agreement whereby NICO reinsured covered liabilities for the years 1999 and prior.  Thereafter Frontier entered into a modification of the aforesaid agreement designated as endorsement No. 1.  As an adjunct to the aggregate reinsurance agreement, Frontier and NICO also entered into a novation

2

agreement concerning certain prior reinsurance agreements that Frontier had entered into with Centre

Reinsurance ["Centre Re"] Company. The novation substituted NICO for Centre Re as Frontier's

insurer. At the beginning of the rehabilitation, the Rehabilitator and NICO entered into endorsement

No. 2 to the aggregate reinsurance agreement in order to obtain advances of reinsurance proceeds to

address Frontier's cash crisis.

In or about September 2004, the Rehabilitator, through proposed endorsement No. 3, sought to

change the aggregate reinsurance agreement with NICO, by adjusting and fixing the parties' future

obligations as of December 31, 31, 2003. As part of its application, the Rehabilitator contended that

the outstanding reinsurance cover of National Indemnity would no longer include surety business, and,

in consideration thereof, $140 million of Frontier debt would be commuted and eliminated. The

amount of remaining cover available to Frontier and Frontier Pacific would be reduced to the total

amount of $225 million, with the Frontier Pacific sublimit remaining intact. In addition, Frontier

Insurance Company would receive a payment of up to $50 million in cash, which would be available

for surety reserves and other losses and cash needs.

In addition to submissions it received both favoring and opposing the application, the Court

heard oral argument of the matter on December 14, 2004. By Decision and Order dated January 4,

2005, the Court denied petitioner's application on the grounds that it was governed by a prior ruling

issued by the Hon. Edward H. Lehner, J.S.C., Supreme Court, New York County, wherein Justice

Lehner rejected a similar application made by the Rehabilitator to ratify endorsement No. 2 to the

NICO reinsurance agreement and other transactions.

**The Application to Renew and Reargue**

Pursuant to CPLR 2221(e)(2) and (3), a motion to renew "shall be based upon new facts not

offered on the prior motion that would change the prior determination...and...shall contain reasonable

3

justification for the failure to present such facts on the prior motion." On the other hand, a motion for leave to reargue pursuant to CPLR 2221 is addressed to the sound discretion of the court and is properly granted upon a showing that the court overlooked or misapprehended the facts and/or the law or mistakenly arrived at its earlier decision.

Here, the Rehabilitator contends that of the parties that opposed the initial petition, only FIGI made the argument that Justice Lehner's February 2003 ruling constitutes the law of the case and bars this Court from exercising its jurisdiction under Insurance Law §7428. However, the Court concurs with the Rehabilitator that the argument that this Court lacks jurisdiction over this matter is unfounded. Insurance Law §7428 requires judicial approval of the Superintendent's proposal to "sell or otherwise dispose of all or any part of the real and personal property of an insurer against whom a proceeding has been brought under [article 74]." Rehabilitator properly argues that because Frontier's contractual right to receive reinsurance proceeds is personal property, its proposed disposition of that right – the partial commutation – is a disposition of personal property within the meaning the statute.

As a further basis for reargument and renewal, the Rehabilitator contends that unlike the petition presented to Justice Lehner for ratification, the instant petition does not seek ratification of "voluminous" transactions, but rather sought prior approval of a single transaction, to wit, the Third Endorsement to the Aggregate Insurance Agreement, which, by its terms, is contingent upon this Court's approval.

In addition, the Rehabilitator contends that no opponent of Endorsement No. 3 has even sought to demonstrate how Frontier can possibly avoid liquidation without the endorsement. Indeed, even the most stringent objections focus not on the potential death knell facing Frontier absent approval of the subject endorsement but rather on the insufficiency of the information contained in the petition (*see, e.g.* Surety Creditors' Memorandum of Law in Opposition, at 2-3). Moreover, WIIC, who did not

4

appear on the initial application (WIIC claims that although it was a party to the Novation Agreement

described in paragraphs 9-10 of the Rehabilitator's Petition, it received no notice of either the Petition

or the instant motion), filed objections to the instant motion based on its assertion that if Frontier were

allowed to enter into Endorsement No. 3, NICO would attempt to hold WIIC liable for the entire

amount of Frontier's financial obligations under the Novation Agreement.  Specifically, Paragraph 9 of

Endorsement No. 3 provides, as is relevant here that:

> "With respect to the Centre Re Funds Held balance at December 31,
> 2003, the Reinsurer agrees not collect this amount from Frontier as part
> of the $140 million of NICO balance forgiveness referenced above,
> effective January 1, 2004.  The Reinsurer agrees that it may only
> collect the remaining funds held balance from the other participants to
> the Centre Re Reinsurance Agreements and the Novation."

WIIC has since withdrawn its objections to the Rehabilitator's motion to renew and reargue.

According to the Rehabilitator, the proposed Third Endorsement features a partial commutation of

the Aggregate Reinsurance Agreement, reducing Frontier's reinsurance coverage under the Agreement

from a remaining limit of approximately $473 million to $225 million and excluding coverage of

surety claims.  In consideration of the limit reduction and surety exclusion, NICO agrees to expunge an

approximately $145 million balance in its favor and to pay approximately $45 million to the

Rehabilitator.

WIIC has resolved its concerns about the impact of Endorsement No. 3 upon them and the

subsidiaries of Frontier and, thus, has withdrawn its objections to the instant motion. Because of

WIIC's resolution of its concerns, FIGI no longer objects to the unconditional approval of

Endorsement No. 3.    The Court is of the view that the aforesaid constitutes new evidence.

Upon these circumstances, the Court finds adequate basis upon which to vacate its original

Decision and Order denying the petition and grant the Rehabilitator's motion.  The motion is granted

5



and the petition seeking approval for the Third Endorsement is granted.

This constitutes the Decision and Order of this Court. All papers, including the original copy of this Decision and Order, are being filed with the Office of the Sullivan County Clerk.

Dated: Monticello, New York
         July 28, 2005


                              ENTER:


                              _____
                              Hon. Nicholas A. Clemente, JSC


**Papers considered:**

Order to show cause, dated April 5, 2005, affirmation of H. Neal Conolly, dated April 4, 2005, with exhibits, the affidavit of Ronald Labenski, sworn to April 4, 2005, and supporting memorandum of law; opposing affirmation of Mark Garbowski, Esq., dated April 21, 2005, and memorandum of law, with exhibits; response of Euler Hermes Kreditversicherungs-AG, by William J. Taylor, Esq., dated April 20, 2005; opposing objection of Cokinos, Bosien & Young, Esqs., dated April 20, 2005, by Charles W. Getman, Esq.; motion for adjournment and/or objections to Rehabilitator's motion of Resolution Oversight Corporation, undated but received May 2, 2005, and objections of Resolution Oversight Corporation, undated but received May 31, 2005, by Marvin Newberg, Esq. (Of Counsel); Rehabilitator's reply memorandum of law, dated June 8, 2005, and reply affidavit of Francesca G. Bliss, sworn to June 8, 2005, with exhibits; affirmation of Suzanne R. Loughlin, Esq., dated May 27, 2005, and the notice of withdrawal of objection to Rehabilitator's motion to renew and reargue, dated July 13, 2005

6

EXHIBIT 5

**FRONTIER PACIFIC ONLY / NICO REINSURANCE AGREEMENT**
**PREMIUM AND LOSS RECONCILIATION THRU DECEMBER 2003**
**INTEREST THRU:    12/31/2003**
**EXCLUDING ADMIN COSTS BUT INCLUDING NICO ADJUSTMENTS**

### 1. REINSURANCE PREMIUM DUE NICO

| | | NOMINAL AMOUNT | DUE DATE | 90 DAY TREAS THEN 6.0% | ACCUML VALUE |
|---|---|---|---|---|---|
| | ORIGINAL PREMIUM | settled | | | settled |
| | ENDORSEMENT #1 | settled | | | settled |
| | SUBTOTAL | settled | | | settled |
| | SURETY NEP - 4Q00 | 5,462,200 | 03/01/01 | 6.38% | 6,509,269 |
| | SURETY NEP - 1Q01 | 1,712,920 | 06/01/01 | 5.08% | 1,946,863 |
| | SURETY NEP - 2Q01 | 1,094,027 | 09/01/01 | 3.63% | 1,198,865 |
| | SURETY NEP - 3Q01 | 757,544 | 12/01/01 | 6.00% | 855,263 |
| | SURETY NEP - 4Q01 | 598,976 | 03/01/02 | 6.00% | 666,594 |
| | SURETY NEP - 1Q02 | 874,969 | 06/01/02 | 6.00% | 959,546 |
| | SURETY NEP - 2Q02 | 42,976 | 09/01/02 | 6.00% | 46,442 |
| | SURETY NEP - 3Q02 | 42,413 | 12/01/02 | 6.00% | 45,174 |
| | SURETY NEP - 4Q02 | (1,356,928) | 03/01/03 | 6.00% | (1,424,832) |
| | SURETY NEP - full year 2003 | (161,904) | 10/01/03 | 6.00% | (164,273) |
| | SUBTOTAL | 9,067,192 | | | 10,629,111 |
| | PREMIUM ADJMT | 0 | 7/1/2000 | 5.88% | 0 |
| | ON CENTRE RE | 0 | 10/1/2000 | 6.23% | 0 |
| | AGREEMENT | 0 | 1/1/2001 | 5.89% | 0 |
| | | 0 | 4/1/2001 | 4.30% | 0 |
| | | 0 | 7/1/2001 | 3.65% | 0 |
| | | 0 | 10/1/2001 | 6.00% | 0 |
| | | 0 | 1/1/2002 | 6.00% | 0 |
| | | 0 | 4/1/2002 | 6.00% | 0 |
| | | 0 | 7/1/2002 | 6.00% | 0 |
| | | 0 | 10/1/2002 | 6.00% | 0 |
| | | 0 | 1/1/2003 | 6.00% | 0 |
| | | 0 | 4/1/2003 | 6.00% | 0 |
| | | 0 | 7/1/2003 | 6.00% | 0 |
| | | 0 | 10/1/2003 | 6.00% | 0 |
| | | 0 | 3/1/2004 | 6.00% | 0 |
| | SUBTOTAL | 0 | | | 0 |
| | TOTAL | 9,067,192 | | | 10,629,111 |

### 2. CEDED PAID LOSSES DUE FIC

| | | AMOUNT | DUE DATE | 90 DAY TREAS THEN 6.0% | ACCUML VALUE |
|---|---|---|---|---|---|
| | 3 Q 2000 | 0 | 12/01/00 | 6.28% | 0 |
| | 4 Q 2000 | 7,285,063 | 03/01/01 | 6.38% | 8,682,636 |
| | 1 Q 2001 | 0 | 06/01/01 | 5.08% | 0 |
| | 2 Q 2001 | 0 | 09/01/01 | 3.63% | 0 |
| | 3 2 2001 | 0 | 12/01/01 | 6.00% | 0 |
| | 4 Q 2001 | 8,610,276 | 03/01/02 | 6.00% | 9,582,282 |
| | 1 Q 2002 | 0 | 06/01/02 | 6.00% | 0 |
| | 2 Q 2002 | 0 | 09/01/02 | 6.00% | 0 |
| | LAST 6 MOS 2002 | 47,184 | 01/15/03 | 6.00% | 49,895 |
| | FULL YEAR 2003 | 4,338,859 | 09/01/03 | 6.00% | 4,421,446 |
| | 1ST QTR. 2004 | . | 6/1/2004 | 6.00% | 0 |
| | TOTAL | 20,280,282 | | | 22,736,259 |

### 3. NET DUE FRONTIER / (NICO)

| | 11,213,090 | | | 12,107,149 |
|---|---|---|---|---|

### 4. ACTUAL FUNDS TRANSFERRED to 2-2-04 TO FRONTIER / (NICO)

| | NOMINAL AMOUNT | | ACCUMULATED AMOUNT |
|---|---|---|---|
| FUNDS TRANSFERRED | 6,330,000 | | 7,197,356 |

### 5. SETTLEMENT DUE FRONTIER / (NICO)

| | NOMINAL AMOUNT | INTEREST | ACCUMULATED AMOUNT |
|---|---|---|---|
| DUE FRONTIER / (NICO) | 4,883,090 | 26,703 | 4,909,793 |

### 6. REMAINING LIMIT

| 35,876,701 |
|---|

FPIC NICO Calculation as of Dec 31 2003 for Oshita (2).xls
5. SUMMARY WITH NICO ADJ

**ORIGINAL**

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

NOTICE TO DEFENDANT:
*(AVISO AL DEMANDADO):*

NATIONAL INDEMNITY COMPANY, a Nebraska
Corporation; and DOES 1 through 10

YOU ARE BEING SUED BY PLAINTIFF:
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

STEVE POIZNER, INSURANCE COMMISSIONER
OF THE STATE OF CALIFORNIA.

<table>
<tr><td>FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE)</td></tr>
<tr><td>F I L E D<br>Clerk of the Superior Court<br><br>MAR 1 8 2008<br><br>BY:    A. RACELIS<br>DEPUTY</td></tr>
</table>

You have **30 CALENDAR DAYS** after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT OF THE STATE OF CALIFORNIA,
COUNTY OF SAN DIEGO
220 W. Broadway
San Diego, CA 92101-3409

CASE NUMBER:
*(Número del caso):* 37-2008-00080104-CU-MC-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
EDMUND G. BROWN, Attorney General
DIANE SPENCER SHAW, Deputy Attorney General (213) 897-2486
300 So. Spring St., Suite 1702, Los Angeles, CA 90013

DATE:                                       Clerk, by _____ , Deputy
*(Fecha)* MAR 1 8 2008                      *(Secretario)*      A. RACELIS        *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)           [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

American LegalNet, Inc.
www.USCourtForms.com

**ORIGINAL** 010

**CIVIL CASE COVER SHEET**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| EDMUND G. BROWN JR., Attorney General of the State of California<br>DIANE SPENCER SHAW, Deputy Attorney General, SBN 073970<br>300 South Spring St., Suite 1702, Los Angeles, California 90013-1230<br>TELEPHONE NO.: (213) 897-2486     FAX NO.: (213) 897-5775<br>ATTORNEY FOR *(Name):* Steve Poizner, Insurance Commissioner | FILED<br>CIVIL BUSINESS OFFICE 14<br>CENTRAL DIVISION<br><br>08 MAR 17 PM 1:09<br><br>CLERK - SUPERIOR COURT<br>SAN DIEGO COUNTY, CA |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO
STREET ADDRESS:  220 W. Broadway
MAILING ADDRESS:
CITY AND ZIP CODE:  San Diego, California 92101-3409
BRANCH NAME:  Central Division

CASE NAME:  STEVE POIZNER, INSURANCE COMMISSIONER OF THE STATE OF CALIFORNIA v. NATIONAL INDEMNITY CO.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ✓ **Unlimited**<br>(Amount demanded exceeds $25,000) | **Limited**<br>(Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | 37-2008-00080104-CU-MC-CTL<br><br>JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22)<br>☐ Uninsured motorist (46) | ☐ Breach of contract/warranty (06)<br>☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03)<br>☐ Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | ☐ Other collections (09)<br>☐ Insurance coverage (18) | ☐ Mass tort (40)<br>☐ Securities litigation (28) |
| ☐ Asbestos (04)<br>☐ Product liability (24) | ☐ Other contract (37)<br>**Real Property** | ☐ Environmental/Toxic tort (30)<br>☐ Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| ☐ Medical malpractice (45)<br>☐ Other PI/PD/WD (23) | ☐ Eminent domain/Inverse condemnation (14)<br>☐ Wrongful eviction (33) | **Enforcement of Judgment** |
| **Non-PI/PD/WD (Other) Tort** | ☐ Other real property (26) | ☐ Enforcement of judgment (20) |
| ☐ Business tort/unfair business practice (07)<br>☐ Civil rights (08) | **Unlawful Detainer**<br>☐ Commercial (31) | **Miscellaneous Civil Complaint**<br>☐ RICO (27) |
| ☐ Defamation (13)<br>☐ Fraud (16) | ☐ Residential (32)<br>☐ Drugs (38) | ✓ Other complaint *(not specified above)* (42) |
| ☐ Intellectual property (19)<br>☐ Professional negligence (25) | **Judicial Review**<br>☐ Asset forfeiture (05) | **Miscellaneous Civil Petition**<br>☐ Partnership and corporate governance (21) |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Petition re: arbitration award (11) | ☐ Other petition *(not specified above)* (43) |
| **Employment**<br>☐ Wrongful termination (36)<br>☐ Other employment (15) | ☐ Writ of mandate (02)<br>☐ Other judicial review (39) | |

2. This case ☐ is  ✓ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties       d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve               in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence           f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☐ monetary  b. ✓ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify):*  Three Causes of Action for Declaratory Relief
5. This case ☐ is  ☐ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 14, 2008

DIANE SPENCER SHAW
*(TYPE OR PRINT NAME)*                              *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |

1 | **MUSICK, PEELER & GARRETT LLP**
ATTORNEYS AT LAW
2 | ONE WILSHIRE BOULEVARD, SUITE 2000
LOS ANGELES, CALIFORNIA 90017-3383
TELEPHONE 213-629-7612
3 | FACSIMILE 213-624-1376

4 | Richard S. Conn (State Bar No. 065513)
   r.conn@mpglaw.com
5 | Susan J. Field (State Bar No. 086200)
   s.field@mpglaw.com
6 | Barbora Pulmanova (State Bar No. 234028)
   b.pulmanova@mpglaw.com
7

8 | Attorneys for NATIONAL INDEMNITY COMPANY

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF SAN DIEGO, CENTRAL DIVISION

| | |
|---|---|
| STEVE POIZNER, INSURANCE COMMISSIONER OF THE STATE OF CALIFORNIA, in his capacity as Liquidator of Frontier Pacific Insurance Company, | Case No. 37-2008-00080104-CU-MC-CTL |
| | [Assigned to The Honorable Ronald L. Styn, Dept. C-62] |
| Plaintiff, | Complaint Filed: March 17, 2008 |
| vs. | **NOTICE TO CLERK AND ADVERSE PARTY OF REMOVAL TO FEDERAL COURT** |
| NATIONAL INDEMNITY COMPANY, a Nebraska corporation; and DOES 1 through 10, | |
| Defendant. | |

TO THE CLERK OF THE ABOVE-ENTITLED COURT AND PLAINTIFF:

      PLEASE TAKE NOTICE that this action has been removed to the United States District Court for the Southern District of California. Attached hereto as Exhibit 1 is a copy of the Notice of Removal with exhibits filed in the United States District Court effecting such removal.

///

///

///

///

583491.1

---

NOTICE TO CLERK AND ADVERSE PARTY OF REMOVAL TO FEDERAL COURT

1      PLEASE TAKE FURTHER NOTICE that, in accordance with 28 U.S.C.

2  § 1446(d), the Superior Court of California shall not proceed any further in this action unless and

3  until the action is remanded by the United States District Court.

4

5  DATED: April 25, 2008          MUSICK, PEELER & GARRETT LLP

6

7                                 By: _____

8                                     Richard S. Conn
                                      Attorneys for NATIONAL INDEMNITY
                                      COMPANY
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

583491.1                                    2

NOTICE TO CLERK AND ADVERSE PARTY OF REMOVAL TO FEDERAL COURT
EX. B p173

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

3

4

     I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within entitled action; my business address is One Wilshire Boulevard, Suite 2000, Los Angeles, California 90017-3383.

5

6

     On April 28, 2008, I served the foregoing document(s) described as **NOTICE TO CLERK AND ADVERSE PARTY OF REMOVAL TO FEDERAL COURT** on the interested parties in this action by placing a copy thereof enclosed in a sealed envelope addressed as follows:

7

8

**See Attached List**

9

☐   **BY PERSONAL DELIVERY.** I delivered such envelope by hand to the offices of the addressee.

10

☒   **BY MAIL.** I caused such envelope with postage thereon fully prepaid to be placed in the U.S. Mail at Los Angeles, California. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

11

12

13

14

☐   **BY FACSIMILE TRANSMISSION.** I caused such document to be transmitted to the addressee(s) facsimile number(s) noted herein. The facsimile machine used complies with Rule 2003 and no error was reported by the machine. Pursuant to Rule 2008(e), I caused the machine to print a transmission record of the transmission, a copy of which is attached to this declaration.

15

16

17

☐   **BY FEDERAL EXPRESS.** I caused such envelope to the deposited at the Federal Express office at Los Angeles, California for guaranteed one/two day delivery with delivery charges prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for delivery by Federal Express delivery service. Under that practice, it would be deposited with the delivery service on that same day with delivery charges thereon fully prepaid at Los Angeles, California in the ordinary course of business for delivery to the addressee.

18

19

20

21

Executed on April 28, 2008, at Los Angeles, California.

22

☒   **(State)**    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

23

24

☐   **(Federal)**   I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

25

26

27

_____
Kathleen Slevcove

28

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

583491.1

3

NOTICE TO CLERK AND ADVERSE PARTY OF REMOVAL TO FEDERAL COURT

**SERVICE LIST**

| | |
|---|---|
| 1 | |
| 2 | EDMUND G. BROWN, JR. |
| | Attorney General of the State of California |
| 3 | W. DEAN FREEMAN |
| | Supervising Deputy Attorney General |
| 4 | DIANE SPENCER SHAW |
| | LISA W. CHAO |
| 5 | Deputy Attorneys General |
| | 300 South Spring Street, Suite 1702 |
| 6 | Los Angeles, California 90013 |

EDMUND G. BROWN, JR.
  Attorney General of the State of California
W. DEAN FREEMAN
  Supervising Deputy Attorney General
DIANE SPENCER SHAW
LISA W. CHAO
  Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, California 90013

Attorneys for Plaintiff Steve Poizner,
Insurance Commissioner of the State of
California in his capacity as Liquidator of
Frontier Pacific Insurance Company

Telephone: (213) 897-2486
Fax: (213) 897-5775

LAZLO KOMJATHY, JR.
Department of Insurance
45 Fremont Street, 24th Floor
San Francisco, California 94105

Attorneys for Plaintiff Steve Poizner,
Insurance Commissioner of the State of
California in his capacity as Liquidator of
Frontier Pacific Insurance Company

Telephone: (415) 538-4413

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

583491.1

4

NOTICE TO CLERK AND ADVERSE PARTY OF REMOVAL TO FEDERAL COURT

1
## PROOF OF SERVICE

2
STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

3

4
    I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within entitled action; my business address is One Wilshire Boulevard, Suite 2000, Los Angeles, California 90017-3383.

5

6
    On April 28, 2008, I served the foregoing document(s) described as **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) [DIVERSITY JURISDICTION]** on the interested parties in this action by placing a copy thereof enclosed in a sealed envelope addressed as follows:

7

8
    **See Attached List**

9
☐    **BY PERSONAL DELIVERY.** I delivered such envelope by hand to the offices of the addressee.

10

11
☒    **BY MAIL.** I caused such envelope with postage thereon fully prepaid to be placed in the U.S. Mail at Los Angeles, California. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

12

13

14
☐    **BY FACSIMILE TRANSMISSION.** I caused such document to be transmitted to the addressee(s) facsimile number(s) noted herein. The facsimile machine used complies with Rule 2003 and no error was reported by the machine. Pursuant to Rule 2008(e), I caused the machine to print a transmission record of the transmission, a copy of which is attached to this declaration.

15

16

17

18
☐    **BY FEDERAL EXPRESS.** I caused such envelope to the deposited at the Federal Express office at Los Angeles, California for guaranteed one/two day delivery with delivery charges prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for delivery by Federal Express delivery service. Under that practice, it would be deposited with the delivery service on that same day with delivery charges thereon fully prepaid at Los Angeles, California in the ordinary course of business for delivery to the addressee.

19

20

21
Executed on April 28, 2008, at Los Angeles, California.

22
☐    **(State)**    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

23

24
☒    **(Federal)**    I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

25

26

27
_____
Kathleen Slevcove

28

583512.1

| | | |
|---|---|---|
| 1 | **SERVICE LIST** | |
| 2 | EDMUND G. BROWN, JR. | Attorneys for Plaintiff Steve Poizner, |
|   | Attorney General of the State of California | Insurance Commissioner of the State of |
| 3 | W. DEAN FREEMAN | California in his capacity as Liquidator of |
|   | Supervising Deputy Attorney General | Frontier Pacific Insurance Company |
| 4 | DIANE SPENCER SHAW | |
|   | LISA W. CHAO | |
| 5 | Deputy Attorneys General | |
|   | 300 South Spring Street, Suite 1702 | |
| 6 | Los Angeles, California 90013 | |
| 7 | Telephone: (213) 897-2486 | |
|   | Fax: (213) 897-5775 | |
| 8 | | |
|   | LAZLO KOMJATHY, JR. | Attorneys for Plaintiff Steve Poizner, |
| 9 | Department of Insurance | Insurance Commissioner of the State of |
|   | 45 Fremont Street, 24th Floor | California in his capacity as Liquidator of |
| 10 | San Francisco, California 94105 | Frontier Pacific Insurance Company |
| 11 | Telephone: (415) 538-4413 | |

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

583512.1

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b)**

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 150272   — MB**

**April 29, 2008
10:52:37**

**Civ Fil Non-Pris**
USAO #.: 08CV0772 CIVIL FILING
Judge..: M. JAMES LORENZ
Amount.:                    $350.00 CK
Check#.: BC161742

**Total-> $350.00**

FROM: STEVE POINZER, INSURANCE COMM
      OF ST OF CA VS NATIONAL
      INDEMNITY CO

JS 44
(Rev. 07/89)

**CIVIL COVER SHEET** ORIGINAL

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I. (a) PLAINTIFFS**
Steve Poizner, Insurance Commissioner of the State of California, in his capacity as Liquidator of Frontier Pacific Insurance Company

**DEFENDANTS**
National Indemnity Company, a Nebraska corporation; and DOES 1 though 10

08 APR 29 AM 10: 49

'08 CV 772 POR

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

*Sacramento*

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

DEPUTY

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Edmund G. Brown Jr.
Attorney General of State of California
300 South Spring Street, Suite 1702
Los Angeles, California 90013
Tel.: (213) 897-2486; Fax: (213) 897-5775

ATTORNEYS (IF KNOWN)
Richard S. Conn (SBN 065513)
Musick, Peeler & Garrett LLP
One Wilshire Boulevard, Suite 2000
Los Angeles, California 90017
Tel: (213) 629-7812; Fax: (213) 624-1376

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business in This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.) 28 U.S.C. section 1441(b): This lawsuit seeks declaratory relief for a determination that Frontier Pacific Insurance Company's ("FPIC's") right to recover monies owed by National Indemnity Company ("NICO") pursuant to an indemnity contract is not subject to any claim of offset for monies that were previously owed to NICO from Frontier Insurance Company, FPIC's parent company.

**V. NATURE OF SUIT** *(PLACE AN "X" IN ONE BOX ONLY)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [X] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reappointment |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 362 Personal Injury - Medical Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander / [ ] 365 Personal Injury - Product Liability | | **PROPERTY RIGHTS** | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 640 R.R. & Truck | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability / **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 840 Trademark | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | **SOCIAL SECURITY** | [ ] 850 Securities/Commodities/Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 690 Other | [ ] 861 HIA (1395ff) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | **LABOR** | [ ] 862 Black Lung (923) | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 720 Labor/Mgmt. Relations | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting / [ ] 510 Motion to Vacate Sentence | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 865 RSI (405(g)) | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [ ] 442 Employment / **HABEAS CORPUS:** | [ ] 740 Railway Labor Act | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations / [ ] 530 General | [ ] 790 Other Labor Litigation | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 240 Torts to Land | [ ] 444 Welfare / [ ] 535 Death Penalty / [ ] 540 Mandamus & Other | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 871 IRS - Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights / [ ] 550 Civil Rights | | | [ ] 890 Other Statutory Actions |
| [ ] 290 All Other Real Property | [ ] 555 Prison Conditions | | | |

**VI. ORIGIN** *(PLACE AN "X" IN ONE BOX ONLY)*
- [ ] 1 Original Proceeding
- [X] 2 Removal from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] YES [X] NO

**VIII. RELATED CASE(S) IF ANY** (See instructions)
JUDGE _____   Docket Number _____

DATE
April 28, 2008

SIGNATURE OF ATTORNEY OF RECORD
*Richard Conn*   Richard S. Conn

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

150272   $350—
04/29/08


CR

**PROOF OF SERVICE**

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within entitled action; my business address is One Wilshire Boulevard, Suite 2000, Los Angeles, California 90017-3383.

     On April 28, 2008, I served the foregoing document(s) described as **CIVIL COVER SHEET** on the interested parties in this action by placing a copy thereof enclosed in a sealed envelope addressed as follows:

     **See Attached List**

☐   **BY PERSONAL DELIVERY.** I delivered such envelope by hand to the offices of the addressee.

☒   **BY MAIL.** I caused such envelope with postage thereon fully prepaid to be placed in the U.S. Mail at Los Angeles, California. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐   **BY FACSIMILE TRANSMISSION.** I caused such document to be transmitted to the addressee(s) facsimile number(s) noted herein. The facsimile machine used complies with Rule 2003 and no error was reported by the machine. Pursuant to Rule 2008(e), I caused the machine to print a transmission record of the transmission, a copy of which is attached to this declaration.

☐   **BY FEDERAL EXPRESS.** I caused such envelope to the deposited at the Federal Express office at Los Angeles, California for guaranteed one/two day delivery with delivery charges prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for delivery by Federal Express delivery service. Under that practice, it would be deposited with the delivery service on that same day with delivery charges thereon fully prepaid at Los Angeles, California in the ordinary course of business for delivery to the addressee.

Executed on April 28, 2008, at Los Angeles, California.

☒   **(State)**    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐   **(Federal)**   I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Kathleen Slevcove

584492.1

1

**SERVICE LIST**

2 | EDMUND G. BROWN, JR.
  Attorney General of the State of California

3 | W. DEAN FREEMAN
  Supervising Deputy Attorney General

4 | DIANE SPENCER SHAW
  LISA W. CHAO

5 | Deputy Attorneys General
  300 South Spring Street, Suite 1702

6 | Los Angeles, California 90013

7 | Telephone: (213) 897-2486
  Fax: (213) 897-5775

8

9 | LAZLO KOMJATHY, JR.
  Department of Insurance
  45 Fremont Street, 24th Floor

10 | San Francisco, California 94105

11 | Telephone: (415) 538-4413

Attorneys for Plaintiff Steve Poizner, Insurance Commissioner of the State of California in his capacity as Liquidator of Frontier Pacific Insurance Company

Attorneys for Plaintiff Steve Poizner, Insurance Commissioner of the State of California in his capacity as Liquidator of Frontier Pacific Insurance Company

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

584492.1

2