1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   W. DEAN FREEMAN
    Supervising Deputy Attorney General
3   FELIX E. LEATHERWOOD
    Supervising Deputy Attorney General
4   DIANE SPENCER SHAW, State Bar No. 073970
    Deputy Attorney General
5   LISA W. CHAO, State Bar No. 198536
    Deputy Attorney General
6       300 South Spring Street, Room 1702
        Los Angeles, California  90013
7       Telephone:  (213) 897-2486
        Fax:  (213) 897-5775
8
    LASZLO KOMJATHY, JR., State Bar No. 99861
9   California Department of Insurance
        45 Fremont Street, 24th Floor
10      San Francisco, CA 94105
        Telephone:  (415) 538-4413
11      Fax:  (415) 904-5896

12  Attorneys for Plaintiff Steve Poizner, Insurance Commissioner
    of the State of California, in his capacity as the Liquidator of
13  Frontier Pacific Insurance Company

14
                    UNITED STATES DISTRICT COURT
15
                  SOUTHERN DISTRICT OF CALIFORNIA
16

17
    STEVE POIZNER, INSURANCE              CASE NO.  08 CV 772 L (POR)
18  COMMISSIONER OF THE STATE OF
    CALIFORNIA, in his capacity as the
19  Liquidator of Frontier Pacific Insurance   **DECLARATION OF LISA W. CHAO**
    Company,                              **IN SUPPORT OF PLAINTIFF'S**
20                                        **OPPOSITION TO DEFENDANT'S**
                    Plaintiff,            **MOTION TO STAY PROSECUTION**
21                                        **OF ACTION PENDING**
            v.                            **ARBITRATION OF CLAIMS**
22
    NATIONAL INDEMNITY COMPANY, a
23  Nebraska corporation; and DOES 1 through
    10,                                   Hearing Date:  August 18, 2008
24                                        Time:          10:30 a.m.
                    Defendants.           Courtroom:     14
25                                        Judge:         Hon. M. James Lorenz

26

27

28

1    I, Lisa W. Chao, declare:

2        1.      I am an attorney at law duly authorized to practice before all courts of the State of

3    California and this Court, and am employed as a Deputy Attorney General with the California

4    Attorney General's Office, which represents Plaintiff Steve Poizner, Insurance Commissioner of

5    the State of California, in his capacity as the Liquidator of Frontier Pacific Insurance Company, in

6    this matter.  I have personal knowledge of the facts recited herein, and if called and sworn, would

7    competently so testify.

8        2.      On or about March 17, 2008, the Commissioner filed a Complaint for Declaratory

9    Relief against Defendant National Indemnity Company ("NICO") and attached in part the

10   following documents as exhibits:

11           a.      Exhibit F:  Order of Rehabilitation entered against Frontier Insurance

12                   Company by Supreme Court of the State of New York, County of New

13                   York on October 15, 2001.

14           b.      Exhibit I:  Petition filed by Superintendent of Insurance of the State of New

15                   York as Rehabilitator of Frontier Insurance Company on or about July 7,

16                   2004, seeking approval of Endorsement No. 3 between Frontier and NICO.

17           c.      Exhibit K:  Affirmation of Neal Connolly in Support of Rehabilitator's

18                   Motion to Renew and Reargue filed on or about April 4, 2005.

19           d.      Exhibit L:  Decision/Order of Supreme Court of the State of New York,

20                   County of Sullivan, dated July 25, 2005.

21       3.      Said exhibits to the Complaint are attached hereto as Exhibits 1-4, respectively,

22   and incorporated herein by this reference.

23       4.      On or about May 5, 2008, my office was served by a copy of Answer of National

24   Indemnity Company to Plaintiff's Complaint for Declaratory Relief ("Answer"), in which NICO

25   admits the authenticity of Exhibits 1 through 4 attached hereto.  A true and correct copy of the

26   Answer is attached hereto as Exhibit 5 and incorporated herein by this reference.

27   ///

28   ///

- 2 -

1       I declare under the penalty of perjury under the laws of the state of California that the

2 foregoing is true and correct.  Executed this 4th day of August, 2008.

3

4

5                                     s/Lisa W. Chao
                                    Lisa W. Chao

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF LISA W. CHAO IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO STAY PROSECUTION OF ACTION PENDING ARBITRATION OF CLAIMS

EXHIBIT 1

RECEIVED
REINSURANCE DIVISION

JUL 0 3 2002

FLORENCE CORNETT
REINSURANCE SPECIALIST

At IAS Part 19 of the Supreme Court of the State of New York, County of New York, at the Courthouse, 60 Centre Street, New York, New York on the 10th day of October, 2001.

PRESENT:

    HON. EDWARD H. LEHNER

        JUSTICE

-------------------------------------------x

    In the Matter of

    The Application of

GREGORY V. SERIO, as Superintendent of Insurance of the State of New York, for an order to take possession of the property of and rehabilitate

FRONTIER INSURANCE COMPANY

-------------------------------------------x

Index No.: 405090/01

ORDER OF
REHABILITATION

Petitioner, Gregory V. Serio, Superintendent of Insurance of the State of New York (the "Superintendent"), having moved this Court for an order to take possession of the property of and rehabilitate Frontier Insurance Company ("Frontier");

NOW, upon reading and filing the order to show cause signed August 27, 2001, the petition of Gregory V. Serio, Superintendent of Insurance, by Kevin Rampe, First Deputy Superintendent, duly verified August 24, 2001 and the emergency affidavit of Kevin Rampe sworn to on August 27, 2001; (the exhibits annexed thereto); the cross motion by Frontier Insurance Group dated September 7, 2001, the annexed proposed petition, the affidavit of Suzanne Loughlin sworn to on September 7, 2001, the exhibits annexed thereto; the affirmation in opposition by Mary Nicholls dated September 7, 2001; the affirmation in opposition by Adam J. Glatt dated September 7, 2001; the affidavit of Kevin Rampe sworn to on October 3, 2001, and the exhibits annexed thereto;

Exhibit 1

4

and the reply affidavit of Joseph Termini sworn to on October 3, 2001 and it appearing to

my satisfaction that:

1. Frontier was incorporated in New York as a stock property/casualty insurer on November 2, 1962 and commenced business on August 17, 1966;

2. Frontier's principal place of business is located at 195 Lake Louise Marie Road, Rock Hill, New York in Sullivan County. Frontier's tax ID number is 13-2559805;

3. Frontier is subject to the New York Insurance Law and particularly to article 74 thereof;

4. Frontier is insolvent;

5. Frontier has failed to cure its impairment of capital or minimum surplus to policyholders;

6. Frontier has consented to the entry of the order of rehabilitation; and

7. It is in the best interest of Frontiers's policyholders, creditors and the general public that the Superintendent be directed to take possession of Frontier's property and to rehabilitate its business and affairs;

And, the Petitioner, having appeared by the Hon. Eliot Spitzer, Attorney General of the State of New York; and due deliberation having been had;

NOW, on motion of Hon. Eliot Spitzer, Attorney General of the State of New York, it is ORDERED as follows:

1. The petition is granted and the cross-motion is withdrawn;

2. Gregory V. Serio, Superintendent, and his successors in office as Superintendent, is appointed Rehabilitator of Frontier and is authorized and directed to immediately take possession of its property, conduct its business, including but not limited to settling claims within his sole discretion, take such steps toward the removal of the causes and conditions which made this proceeding necessary as he shall deem wise and expedient, and deal with the property and business of Frontier in its name or in the name of the Superintendent as Rehabilitator;

2

Exhibit 1

5

3. Notice to all persons having claims against Frontier to file or present their claims to the Superintendent as Rehabilitator is deferred until further order of this court;

4. Frontier, its officers, directors, depositories, trustees, agents, servants, employees, and all other persons, having any property or records belonging or relating to Frontier, including, but not limited to insurance policy, loss claim and legal files are directed, upon request of the Superintendent as Rehabilitator to assign, transfer, set over and deliver to him all such property or records;

5. Any persons, firms, corporations, or associations having any books, papers or records relating to the business of Frontier shall preserve them and submit them to the Superintendent as Rehabilitator for examination and copying at all reasonable times;

6. All persons including, but not limited to the officers, directors, shareholders, trustees, agents, servants, employees, attorneys, and managers of Frontier, are enjoined and restrained from the transaction of Frontier's business, the waste or disposition of its property, interfering with the Superintendent as Rehabilitator in the possession, control and management of Frontier's property or in the discharge of his duties;

7. All persons are enjoined and restrained from commencing or prosecuting any actions, lawsuits, or proceedings against Frontier, or the Superintendent as Rehabilitator;

8. All persons are enjoined and restrained from obtaining preferences, judgments, attachments or other liens or making any levy against Frontier's assets or any part thereof.

9. All parties to actions, lawsuits, and special or other proceedings in which Frontier is obligated to defend a party pursuant to an insurance policy, bond, contract or otherwise are enjoined and restrained from proceeding with any discovery, court conferences including but not limited to pre-trial conference, trial, application for judgment or proceedings on settlements or judgments for a period of one hundred and eighty days from the date of entry of this order.

10. Those persons who may have first-party or New York Comprehensive Automobile Insurance Reparations Act (No-Fault) policyholder loss claims against Frontier coming within the purview of Article 76 of the Insurance Law are enjoined from presenting and filing such claims in this proceeding for 90 days from the date of entry of this order.

3

Exhibit 1

6

11. In addition to the powers enumerated above and those delegated to the Rehabilitator in the New York Insurance Law, the Rehabilitator, by Order to Show Cause on notice to interested parties, including without limitation Frontier's sole shareholder, and subject to court approval, may sell or otherwise dispose of all or any part of the real and personal property of Frontier, sell any line of insurance, and take such other actions as set forth in Section 7428 of the New York Insurance Law.

12. That the Superintendent of Insurance, as Rehabilitator, may at any time make further application at the foot of this Order to this Court for such further and different relief as he sees fit.

13. All further papers in this proceeding shall bear the caption:

In the Matter of

The Rehabilitation of

FRONTIER INSURANCE COMPANY

E N T E R 

_____
J.S.C.

RehOrder 1



4

Exhibit 1

7

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: Hon. _____EDWARD H. LEHNER_____    PART __19__

                                                 Justice

Gregory V. Serio

                             INDEX NO. ___405090/01___

                             MOTION DATE _____

       - v -

                             MOTION SEQ. NO. ___001___

Frontier Insurance Co.

                             MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | _____ |
| Answering Affidavits — Exhibits _____ | _____ |
| Replying Affidavits _____ | _____ |

Cross-Motion:  ☐ Yes   ☐ No

Upon the foregoing papers, it is ordered that this motion by petitioner for an order of rehabilitation is granted per decision on record this date.

Order signed.

F I L E D
OCT 1 5 2001
NEW YORK
COUNTY CLERK'S OFFICE

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE

Dated: __OCT 1 0 2001__    _____    J.S.C.

Exhibit 1
8

# EXHIBIT 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SULLIVAN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
                                        :
In the Matter of                        :    Index No.: 1357/03
                                        :
the Rehabilitation of                   :
                                        :
FRONTIER INSURANCE COMPANY              :    PETITION
                                        :
                                        :
                                        :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        JAMES P. O'CONNOR, Special Deputy Superintendent of Insurance and

Agent of GREGORY V. SERIO, Superintendent of Insurance of the State of New York as

Rehabilitator (the "Rehabilitator") of Frontier Insurance Company ("Frontier") hereby

petitions this court, for an order, pursuant to N.Y. Insurance Law §§ 7428 and 7429, ratifying

and approving the Rehabilitator's transactions with National Indemnity Company ("NICO")

as described herein and avers upon information and belief:

        1.      By order (the "Rehabilitation Order") entered October 15, 2001,

Frontier, a New York domiciled stock property/casualty insurer, was adjudged insolvent and

placed into rehabilitation.  A copy of the Rehabilitation Order is annexed hereto as Exhibit

"A".[1]

        2.      The Rehabilitation Order appointed the Superintendent of Insurance

Gregory V. Serio and his successors in office as Rehabilitator.

        3.      The Rehabilitation Order charged the Rehabilitator with, among other

things, responsibility for:

_____

        [1]      The Rehabilitation Order followed a Temporary Rehabilitation Order that had been entered
August 27, 2001.

**Exhibit 2**
**9**

a.   taking possession of the Company's property and assets;

b.   conducting its business;

c.   taking such steps toward the removal of the causes
and conditions which made the rehabilitation
proceeding necessary.

4.   The Rehabilitator has previously filed a Report on the Status of the

Rehabilitation of Frontier dated October 30, 2002 (the "Report"). The Report summarizes

the Rehabilitator's initial efforts to take over and conduct the affairs of Frontier and includes

a discussion of Frontier and the Rehabilitator's transactions with NICO up to that point. A

copy of the Report (without exhibits) is annexed as Exhibit B.

## THE FRONTIER-NICO AGREEMENTS

5.   Prior to rehabilitation, Frontier's management entered into two

reinsurance agreements with NICO. Both agreements were effective as of July 1, 2000. The

primary agreement was an Aggregate Reinsurance Agreement whereby NICO reinsured

covered liabilities for the years 1999 and prior. Thereafter, Frontier, while still controlled by

its former management, entered into a modification of the Aggregate Reinsurance Agreement

designated as Endorsement No. 1.

6.   As an adjunct to the Aggregate Reinsurance Agreement, Frontier and

NICO also entered into a Novation Agreement concerning certain prior reinsurance

agreements that Frontier had entered into with Centre Reinsurance Company ("Centre Re").

The novation substituted NICO for Centre Re as Frontier's insurer.

7.   At the beginning of the Rehabilitation, the Rehabilitator and NICO

entered into Endorsement No. 2 to the Aggregate Reinsurance Agreement in order to obtain

advances of reinsurance proceeds to address Frontier's cash crisis. Recently, the

2

**Exhibit 2**
**10**

Rehabilitator and NICO have agreed upon terms set forth in the proposed Endorsement No. 3. As is detailed below, the proposed endorsement entails material changes to the Aggregate Reinsurance Agreement and resolves entirely Frontier's financial obligations under the Novation Agreement.

### THE AGGREGATE REINSURANCE AGREEMENT

8.    In September 2000, as Frontier's financial condition was deteriorating, the insurer entered into a retroactive Aggregate Reinsurance Agreement (the "Aggregate Reinsurance Agreement") with NICO. Under the agreement, which was effective as of July 1, 2000, Frontier transferred $490 million to NICO and, subject to certain exclusions, NICO agreed to pay up to $800 million of Frontier's ultimate net loss in relation to covered liabilities for accident years 1999 and prior.[2] By transferring more liabilities than assets, Frontier was able to increase its statutory surplus. A copy of the Aggregate Reinsurance Agreement is annexed hereto as Exhibit C.

### THE NOVATION AGREEMENT

9.    To fully understand Frontier's relationship with NICO, the Court must also be aware of a separate transaction involving Centre Reinsurance Company ("Centre Re"). Years before entering into the Aggregate Reinsurance Agreement, Frontier entered into a series of reinsurance transactions with Centre Re, pursuant to which Frontier and its subsidiaries were jointly and severally liable, for accident years 1995, 1996 and 1997.[3]

---

[2]    The term "accident year" refers to the year in which losses occur (as opposed to the year in which they are reported).

[3]    For accident years 1998 and 1999, Frontier and Centre Re entered into more traditional reinsurance treaties that provided for fixed premium. The parties later agreed to commute the 1999 treaty.

**Exhibit 2**
**11**

Under the several accident year treaties payment of most of the premium due to Centre Re from Frontier was deferred. The treaties provided a partial cover for losses, subject to certain retentions and co-insurance conditions, effectively leaving the obligation to pay most of the covered losses as the ultimate responsibility of Frontier. As of mid-2000, Centre Re had received premiums of approximately $78 million for the covers provided, with Frontier having the continuing obligation to pay the premium for funds withheld plus an additional amount for accruing interest upon the unpaid premium account balances. Payment of the premiums was not due to Centre Re until claims were incurred and paid, with the parties contemplating that Frontier would actually pay the claims and Centre Re would give a corresponding credit upon claim and LAE payments being made by Frontier for the 1995 through 1997 accident years. The Centre Re premiums to be paid and withheld by Frontier, exclusive of interest, were in excess of $165 million. As long as Frontier had the wherewithal to pay the claims for the 1995 to 1997 years, the Centre Re debt was contingent and illusory in the eyes of Frontier's management.

10.    To facilitate the Aggregate Reinsurance Agreement with NICO, Frontier and Centre Re agreed to novate the Centre Re treaty, substituting NICO as the reinsurer, with Centre Re and NICO agreeing to the financial consideration between them, and with Frontier continuing its original obligation to make premium payments as claims arose while accruing interest upon the unpaid balance. Frontier's primary and ultimate obligation to pay its premium funds withheld as claims were incurred under its Centre Re obligations did not change and were to underlie any aggregate reinsurance with NICO.

4

**Exhibit 2**

**12**

ENDORSEMENT NO 1
AGGREGATE REINSURANCE AGREEMENT

11.    On or about January 5, 2001, Frontier's management and NICO amended the Aggregate Reinsurance Agreement ("Endorsement No. 1"). Under Endorsement No. 1, Frontier paid an additional $37 million to NICO in consideration of expanded coverage as set forth below. The endorsement also added Frontier's subsidiary, Frontier Pacific Insurance Company ("FPIC"), as a reinsured party. FPIC paid an additional $27 million to NICO. Endorsement No. 1 raised the aggregate limit from $800 million to $858 million (plus further increases as particularized below), including a separate sublimit of $47 million for coverage of FPIC.

12.    Endorsement No. 1 expanded the business covered by the Aggregate Reinsurance Agreement to include surety business (other than bail and appellate bonds) for losses occurring after 1999. The endorsement also allocated prospective surety premium to NICO and increased the aggregate limit by one dollar for each dollar of additional surety premium billed by Frontier. Endorsement No. 1 also modified the reinsurance and subrogation rights of NICO to exclude from NICO's account recoveries for losses that were paid by Frontier prior to, or exclusive of, the treaty cover. NICO was entitled to surety subrogation under the endorsement.

13.    Because Frontier had pre-existing excess of loss reinsurance coverage for most of its surety business, NICO's surety obligation was net of all other reinsurance for surety. Frontier retained the credit risk for collection of proceeds due from its other surety reinsurers. A copy of Endorsement No. 1 is annexed hereto as Exhibit D.

5

Exhibit 2
13

14. So, for example, if Frontier had a surety bond in-force and billed $10,000 of additional premium on that bond after Endorsement No. 1 became effective, then the additional premium was payable to NICO and the limit under the Aggregate Rensurance Agreement was raised by $10,000. If a $100,000 loss eventuated under the bond and $30,000 of that loss was covered by pre-existing reinsurance, NICO would pay the $70,000 remainder. The credit risk of the other reinsurers not paying their $30,000 share of the loss remained with Frontier. Any subrogation recoveries in respect of that loss would be for the account of NICO and the other reinsurers in accordance with their interests.

ENDORSEMENT NO 2
AGGREGATE REINSURANCE AGREEMENT

15. On May 7, 2001, the Insurance Department found that Frontier's required minimum surplus to policyholders was impaired. Frontier's authority to write new business in New York was suspended and other jurisdictions soon followed suit. On or about July 5, 2001, Frontier submitted its first quarter financial statement, acknowledging that the company was insolvent and that its required minimum surplus was impaired by over $16 million dollars.

16. During this period, Frontier's management asked Clarendon National Insurance Company ("Clarendon") to release part of the collateral Clarendon held pursuant to a fronting and cut-through arrangement with Frontier and its insurer affiliates. In the view of Frontier's management, the value of the collateral provided by Frontier (a trust account) exceeded the estimated obligations of Frontier and its affiliated insurers by approximately $24 million. The bulk of that surplus was attributable to Frontier. Clarendon maintained that there was no surplus relative to the projected ultimate net loss on the business falling under

Exhibit 2
14

the arrangement. On or about July 13, 2001, Clarendon drew down the entire amount of the Trust, some $197 million.

17.    By August 2001, Frontier's cash position deteriorated and it could no longer meet its current obligations. Frontier's management drafted a report of its financial results through June 30, 2001, which reported a negative surplus of over $60 million. Actuarial review by professionals retained by the Department of Insurance determined that Frontier had a negative surplus of over $170 million. A subsequent review of inadmissible assets indicated that the Frontier negative surplus may have actually exceeded $200 million at the time Frontier was placed in Rehabilitation.

18.    On August 27, 2001, the Supreme Court of the State of New York, County of New York, entered a Temporary Rehabilitation Order appointing the Superintendent as temporary Rehabilitator of Frontier. The Rehabilitator determined upon entry into Frontier's offices that its accounts were overdrawn by as much as $10 million with respect to current obligations and claim settlements that had been agreed to with checks processed and ready for delivery.

19.    To operate Frontier, the temporary Rehabilitator offered employment to more than 300 existing employees. The temporary Rehabilitator also entered into negotiations with NICO in order to address the company's cash crisis. Because Frontier's operating expenses and its claims on some lines of business were not covered by the Aggregate Reinsurance Agreement,[2] Frontier in rehabilitation could not meet its obligations

---

[2]        Even after Endorsement No. 1, the Aggregate Reinsurance Agreement excluded certain lines of business and, except in relation to the surety business, it did not cover any losses occurring after January 1, 2000.

**Exhibit 2**
**15**

as they became due. At the October 5, 2001 hearing before Justice Lehner, it was noted that

Frontier had limited liquid assets and that it could not settle claims without negotiating a

funding arrangement with NICO and/or Clarendon. Justice Lehner directed that the proposed

Rehabilitation Order be changed to authorize the Rehabilitator to settle claims in his sole

discretion.

   20.  Meanwhile, the temporary Rehabilitator and NICO entered into a

further modification of the Aggregate Reinsurance Agreement ("Endorsement No. 2"),

modifying that agreement to enable Frontier in rehabilitation to continue operations and fund

claims. This arrangement has provided the financial resources, at least in the short term,

necessary for the Rehabilitator to pay Frontier claims arising out of policy obligations while

in rehabilitation. Instead of just funding claims to the extent of its current obligation under

the Aggregate Reinsurance Agreement, NICO agreed to make advance payment of

reinsurance proceeds for which it was not yet obligated. In consideration, the temporary

Rehabilitator agreed to reduce NICO's ultimate liability under the Aggregate Reinsurance

Agreement by an amount equal to the advanced reinsurance proceeds plus a charge for

interest. At any time, either NICO or the Rehabilitator can terminate the funding

arrangement ordained by Endorsement No. 2, a circumstance that continues to this day.

NICO's prerogative to discontinue the advances remains of great concern. If NICO were to

terminate the arrangement, its obligation to pay reinsurance will be reduced by the amount of

the advanced reinsurance proceeds and accrued "interest". A copy of Endorsement No. 2 is

annexed as Exhibit E.

   21.  As noted, the Court issued the current order of Rehabilitation dated

October 15, 2001, appointing the Superintendent of Insurance as the Rehabilitator, with a

8

**Exhibit 2**
**16**

finding of insolvency. The Court's order permitted the Rehabilitator to settle and pay claims in his sole discretion, with a 180-day stay upon actions brought against Frontier insureds, and an indefinite stay upon actions brought against Frontier itself.

## THE REHABILITATION TO DATE

22.    Almost immediately, the rehabilitation encountered severe problems due to the impending technical defaults on more than $600 million of reclamation and related bonds written in coal mining states. The insolvency and loss of Frontier's credit rating were events of default within the terms of the obligations against which the Frontier bonds had been posted. In the ensuing months, however, the Rehabilitator negotiated terminations of hundreds of millions of dollars of bond exposures, allowing Frontier to be replaced as surety on most but not all of the impacted coal mining and environmental bond exposures.

23.    In 2002, the Rehabilitator also negotiated and completed a settlement with a co-surety upon more than $100 million of exposure, which Frontier substantially reinsured. The settlement broke an impasse with the co-insurer, eliminated almost $50 million of reinsurance obligations, and provided current funding for a 50% share of the co-surety obligation. These actions were also of significant benefit to NICO and allowed the parties to consider that the reinsurance treaty limits were potentially fully available to the estate and its claimants.

24.    Financial and actuarial analysis for year-end 2002 showed that the insolvency that had originally been estimated in excess of $170 million had been reduced to approximately $151 million. By year-end 2003, further progress had reduced the insolvency to approximately $135 million.

**Exhibit 2**
**17**

25.     The Rehabilitator has made a great effort to handle claims proactively, to post accurate ultimate reserves and to fairly resolve, or to allow the judicial process to determine, the value of claims made against Frontier insureds. Claim counts have been significantly reduced, even while a substantial inflow of new claims and cases has occurred. Results have been dramatic in Frontier's medical malpractice lines where for two consecutive years the posted ultimate reserves of cases closed have yielded savings of an average approaching 40%. Frontier is now taking claims it cannot settle to trial much more frequently than it did pre-rehabilitation. For example, medical malpractice cases taken to verdict have yielded defense verdicts more than 90% of the time.

26.     In view of the company's progress, the Rehabilitator has endeavored to find a way to make the Rehabilitation ultimately successful by eliminating Frontier's large debt to NICO occasioned by the pre-rehabilitation Novation Agreement and by the surety premium and credit risk Frontier retained under the Endorsement No.1.

27.     The Rehabilitator estimates that, as of December 31, 2003, the total obligation due to NICO was approximately $145 million dollars, a figure above and beyond the company's negative surplus of $135 million. The amount due to NICO was primarily occasioned by the funds due pursuant to the Novation Agreement and by the surety business endorsement and credit risk retained by Frontier.

28.     As of the initiation of the rehabilitation in August, 2001, the Centre Re obligation under the Novation Agreement, inclusive of interest, was approximately $93 million. The surety premium due to NICO, inclusive of the credit risk retained for surety premium billed but unpaid, and surety reinsurance credited but not received, plus the interest accrued thereon, was approximately $25 million as of December 31, 2003. The two cited

Exhibit 2
18

items alone occasioned debts totaling $118 million, debts occasioned not by the Rehabilitator, but solely by the actions of prior management. A copy of the Frontier-NICO reconciliation is annexed as Exhibit F.

      29.     Accordingly, the Rehabilitator determined that in a negotiation with National Indemnity, the primary objective of eliminating the amount due should also include the elimination of treaty conditions that would tend to create further debt, such as the credit risk for surety premium and reinsurance.

ENDORSEMENT NO 3
AGGREGATE REINSURANCE AGREEMENT

      30.     A protracted negotiation ensued, which crystallized into the proposed Endorsement No. 3. In its essence, the change in the Aggregate Reinsurance Agreement with National Indemnity will adjust and fix the parties' future obligations as of December 31, 2003. The outstanding reinsurance cover of National Indemnity will no longer include surety business, and, in consideration thereof, $140 million of Frontier debt (inclusive of all Centre Re premium due plus interest accrued) will be commuted and eliminated. The amount of remaining cover available to Frontier and to Frontier Pacific will be reduced to the total amount of $225 million, with the Frontier Pacific sublimit remaining intact. Frontier Insurance Company will receive a payment of up to $50 million in cash, which will be available for surety reserves and any other losses and cash needs. The precise amount of cash to be received will be $50 million less the amount of debt to National Indemnity, if any, that exceeds the $140 million baseline. A copy of Endorsement No. 3 is annexed as Exhibit G.

      31.     The transaction is not risk free. If losses and loss adjustment expenses for non-surety business covered by the Aggregate Reinsurance Agreement exceed $225

11

Exhibit 2
19

million, there will be no NICO coverage for the excess. Year-end 2003 estimates of reserves for that business exceed $310 million. Nonetheless, the Rehabilitator recommends that Endorsement No. 3 be approved because, if recent settlement discount patterns and effective claims handling practices hold, the ultimate claim costs may fall within the new limit of $225 million.

32.    Frontier is accepting the approximately $50 million in cash to cover the surety exposure that is being ceded back by NICO. That amount will be supplemented by subrogation recoveries that are also being ceded back and by elimination of premium and reinsurance credit risk. The Rehabilitator estimates that the recovery of subrogation and reinsurance on surety could exceed $20 million, and the elimination of the credit risk should eliminate more than $10 million of future debt plus compounding interest. However, there is risk here as well. Substantial surety claims, occasioned by the non-traditional surety underwriting at Frontier, continue to emerge. The Rehabilitator must continue to experience success in the handling of large surety claims to overcome the disturbing pattern of unanticipated large surety claims.

33.    There is no assurance that Frontier has reached the stage where we can predict with certainty that the Rehabilitation will be successful. However, without this proposed transaction, it is readily apparent that the opportunity to resolve with National Indemnity the Centre Re unpaid premium and other obligations due from Frontier will recede and ultimately disappear. There is no realistic way that $140 million of debt would be overcome without this renegotiation and partial commutation of the obligations of the parties. In the exercise of his business judgment, the Rehabilitator respectfully requests that the transactions with NICO be approved by this Court.

Exhibit 2
20

NOTICE

34.    To give notice of this petition, the Rehabilitator respectfully requests that the Court grant the annexed Order to Show Cause, which provides for service of notice by publication in the New York Law Journal and Business Insurance once a week for two consecutive weeks and by regular mail upon: (i) Frontier's parent company, Frontier Insurance Group, Inc.; (ii) those with open claims whose appearances were noted on the record at the hearings held on October 5 and 10, 2001; and (iii) those with open claims who have subsequently appeared in this proceeding.

REQUEST FOR RELIEF

35.    The Rehabilitator further requests that the Court, following the hearing, issue an order:

    a.    ratifying and approving the Rehabilitator's transactions with National Indemnity as described herein;

    b.    providing such other and further relief as the Court deems just and proper.

Except as set forth herein, no prior application for this or similar relief has been made to this or any other Court.

Exhibit 2
21

WHEREFORE, Petitioner respectfully requests that the accompanying Order to Show Cause be granted and that a hearing be scheduled sufficiently far in the future for the provision of notice as provided for therein and that, upon the hearing, the Court issue an order granting the relief sought in this petition.

Dated:          New York, New York
                July 7th, 2004


                              JAMES P. O'CONNOR
                              Special Deputy Superintendent and
                              Agent of Gregory V. Serio,
                              Superintendent of Insurance of the
                              State of New York as Rehabilitator of
                              Frontier Insurance Company

14

**Exhibit 2**
**22**

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK)

JAMES P. O'CONNOR, being duly sworn, deposes and says:

That he has read the foregoing Verified Petition and knows the contents thereof, and that the same is true to his own knowledge except as to the matters therein stated to be alleged upon information and belief, and as to those matters he believes it to be true; that the reason this petition is verified by this deponent rather than by the Superintendent of Insurance is that deponent is the duly appointed Special Deputy Superintendent of Insurance to take possession of the property of and rehabilitate the business of Frontier Insurance Company and as such is acquainted with the facts alleged therein.

Deponent further says that the sources of his information and the grounds of his belief as to the matters stated in said Verified Petition to be alleged upon information and belief are records, books and papers of said company in the possession of the Rehabilitator and communications made to deponent by employees and attorneys of the Rehabilitator.

_____
JAMES P. O'CONNOR

Sworn to before me this
7th day of July, 2004

_____
Notary Public

AMY R. BORODACH
Notary Public, State of New York
No. 01BO4926269
Qualified in Kings County
Commission Expires June 1, 2006

**Exhibit 2**
23

EXHIBIT 3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SULLIVAN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
In the Matter of                              :    Index No.: 1357/03
                                              :
the Rehabilitation of                         :
                                              :
FRONTIER INSURANCE COMPANY                    :    AFFIRMATION IN SUPPORT OF
                                              :    REHABILITATOR'S MOTION TO
                                              :    RENEW AND REARGUE
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

       H. NEAL CONOLLY, an attorney duly admitted to practice before the

Courts of this State, affirms under penalties of perjury:

    1.    I am the Administrator of Frontier Insurance Company in

Rehabilitation ("Frontier") and I make this affirmation in support of the motion of

Howard Mills, Acting Superintendent of Insurance of the State of New York in his

capacity as Rehabilitator of Frontier Insurance Company (the "Rehabilitator")[1] to renew

and reargue the Rehabilitator's Petition for approval of the proposed Third Endorsement

to Frontier's Aggregate Reinsurance Agreement with National Indemnity Company

("NICO") pursuant to N.Y. Insurance Law §7428.

    2.    The Court received submissions favoring and opposing the

Rehabilitator's Petition and heard oral argument on December 14, 2004.  On January 4,

2005 the Court issued its Decision/Order denying the Rehabilitator's Petition on grounds

that it was governed by Justice Lehner's prior ruling that "there is no statutory provision

for confirmation or ratification of interim reports."  Justice Lehner's ruling, which was

---

[1]    Mr. Mills has succeeded Gregory V. Serio, the original Rehabilitator in this proceeding.

Exhibit 3
24

issued on February 19, 2003, denied the Rehabilitator's prior application for ratification of a report that, as Justice Lehner observed, set forth "voluminous activities" that the Rehabilitator had engaged in up to the date of the application. For the Court's convenience, copies of the January 4, 2005 Decision/Order and of Justice Lehner's February 19, 2003 order are annexed as Exhibits A and B, respectively.

### Timeliness of This Motion

3.      The January 4, 2005 Decision/Order has not been served with notice of entry by any party. Accordingly, this motion is timely.

### Basis for Reargument/ Renewal

4.      Because the Third Endorsement would, among other things, relinquish part of Frontier's reinsurance coverage from NICO, it is a disposition of Frontier's personal property – its contractual right to reinsurance proceeds – that, according to N.Y. Insurance Law § 7428, cannot be effectuated without the approval of this Court. Accordingly, the Court has the jurisdiction to approve or disapprove the Third Endorsement. The Rehabilitator respectfully submits that the contrary argument advanced by Frontier's sole shareholder, Frontier Insurance Group, Inc. ("FIGI"), was erroneous and that the Court erred in adopting it.

### Urgency of the Rehabilitator's Application/ Basis for Proceeding By Order to Show Cause

5.      This is an urgent matter and the Rehabilitator seeks to proceed by order to show cause because Frontier is running without sufficient cash. Without approval of the Third Endorsement, which will bring an immediate infusion of approximately $45 million, Frontier faces imminent liquidation. Since execution of the Second Endorsement in September 2001, Frontier has functioned under a provisional

funding arrangement whereby NICO advanced reinsurance proceeds to Frontier before they became payable under the Aggregate Reinsurance Agreement. However, as elaborated in the Petition, that funding arrangement was terminable by NICO on one-day's notice.[2] Recently, NICO has restricted Frontier's funding, citing the Rehabilitator's lack of success in obtaining Court approval of the Third Endorsement. *Without the NICO funding, there is no viable prospect of rehabilitation and Frontier will imminently have to be liquidated.[3]*

      6.    In view of the urgency of this application, the Rehabilitator respectfully requests that the Court permit it to be brought on by order to show cause and that the Court set the earliest practicable date for hearing.

### Facts Bearing Upon the Rehabilitator's Motion

      7.    The proposed Third Endorsement features a partial commutation of the Aggregate Reinsurance Agreement, reducing Frontier's reinsurance coverage under the Agreement from a remaining limit of approximately $473 million[4] to $225 million and excluding coverage of surety claims (December 14, 2004 Transcript at 25). In consideration of the limit reduction and surety exclusion, NICO agrees to expunge an

---

[2]    "NICO's prerogative to discontinue the advances remains of great concern" (Petition at ¶ 20). The point was also addressed at the hearing on the Petition:

> As we stand now, our financing arrangement with NICO is terminable on one-day's notice. And at that point the rehabilitation could not go forward as a rehabilitation. Liquidation would be the immediate consequence.

(December 14, 2004 Transcript at 27.

[3]    "If at any time the superintendent deems further efforts to rehabilitate [the] insurer would be futile, he may apply to the court under this article for an order of liquidation" N.Y. Insurance Law § 7403(c).

[4]    The limit of coverage under the Aggregate Reinsurance Agreement was approximately $856 million, including the additional limit resulting from additional surety premium. As of year-end 2003, NICO

3

Exhibit 3
26

approximate $145 million balance in its favor (principally in respect of the separate novation agreement) and to pay approximately $45 million to the Rehabilitator. *Id.*

8.    The contractual reduction of Frontier's reinsurance coverage triggers the requirement for judicial approval stated by N.Y. Insurance Law §7428. Because Frontier's contractual right to receive reinsurance proceeds is personal property, the Rehabilitator's proposed disposition of that right – the partial commutation – is a disposition of personal property within the meaning of Insurance Law § 7428 (requiring judicial approval of the Superintendent's proposal to "sell or *otherwise dispose* of all *or any part* of the real and *personal property* of an insurer against whom a proceeding has been brought under [Article 74]") (emphasis supplied).

9.    Though the legal requirement for Court approval is addressed more comprehensively in the accompanying memorandum of law, I do wish to highlight for the Court some factual matters bearing on this motion.

10.    In contrast to the report presented to Justice Lehner for ratification in 2002, the Petition presented to this Court did not seek "ratification" of "voluminous" transactions, but rather sought prior approval of a *single* transaction – the proposed Third Endorsement to the Aggregate Reinsurance Agreement – which, by its terms, is contingent upon this Court's prior approval. *See* Third Endorsement at ¶ 1 ("presentation of this Endorsement number 3 to the Rehabilitation Court for approval of this Endorsement"); and ¶ 7 (NICO's payment to Frontier due "[t]en days following approval of this agreement by the Rehabilitation Court in a final, non-appealable order").

---

has already paid over $383 million in respect of ceded paid losses that had come due under the Agreement. That leaves $473 million in remaining limit as of December 31, 2003 (December 14, 2004 Transcript at 25).

4

11.    Moreover, based upon the course of judicial oversight of this rehabilitation, as well as other insurer receiverships under N.Y. Insurance Law Art. 74, it seems clear that Justice Lehner did not intend his February 19, 2003 ruling as a general renunciation of jurisdiction over reinsurance commutations or other transactions subject to approval pursuant to N.Y. Insurance § 7428. This is best illustrated by Justice Lehner's successive approvals of a series of agreements disposing of Frontier's rights to receive reinsurance proceeds from a Bermuda reinsurer, Platinum Indemnity Limited ("Platinum"). Under separate agreements, Platinum had reinsured Frontier on business originating from various producers.

12.    On April 20, 2003, Justice Lehner granted the Rehabilitator's petition for approval of a commutation of Platinum's agreement to reinsure Frontier in respect of business produced by Dwight Halvorson Insurance Services ("Halvorson"). In consideration of a release of its obligations as reinsurer, Platinum transferred to the Rehabilitator some $2,918,851, comprised by $15,000 cash and an assignment to the Rehabilitator of Platinum's indemnification rights against a Halvorson affiliate, Food Services Insurance Managers ("FSIM").[5] Both the Rehabilitator's Verified Petition and the Order granting it specifically cited § 7428 in their opening paragraphs. Copies of the April 20, 2003 order and of the papers upon which it was granted are annexed as Exhibit C.

13.    On July 18, 2003, Justice Lehner signed an order granting the Rehabilitator's petition for approval of an agreement commuting Platinum's obligations as reinsurer of Frontier on business produced by Risk Management Administrators, Inc.

---

[5]    As part of an arrangement that enabled FSIM to participate in the underwriting results of business produced by its affiliate to Frontier, FSIM invested in the reinsurer and, under a Subscription and Shareholders Agreement, became entitled to receive the profits associated with the business to Platinum and obligated to indemnify Platinum against loss.

("RMA") for $4,922. Again, both the Rehabilitator's Verified Petition and the Order granting it specifically cited § 7428 in their opening paragraphs. Copies of the July 30, 2003 order and of the papers upon which it was granted are annexed as Exhibit D.

14.    On or about July 30, 2003, Justice Lehner issued an order granting the Rehabilitator's petition for approval of another agreement disposing of reinsurance obligations owed by Platinum -- an Assignment and Novation Agreement that transferred Platinum's rights and obligations under certain reinsurance agreements to another Bermuda reinsurer, Landsdowne Insurance Company, Ltd. ("Landsdowne"). Copies of the July 30, 2003 order and of the papers upon which it was granted are annexed as Exhibit E.

15.    It bears emphasis that each of these §7428 approvals was issued by Justice Lehner *after* his February 19, 2003 order declining to ratify the Rehabilitator's report. I respectfully submit that they reflect Justice Lehner's ongoing willingness to rule upon petitions for approval of *specific transactions* that dispose of Frontier's contractual rights to receive reinsurance proceeds.

16.    After the Frontier rehabilitation was transferred to this Court, the Rehabilitator presented a petition for approval of a Commutation and Release Agreement with Landsdowne, which provided for commutation of Landsdowne's obligations as reinsurer of Frontier in relation to a Human Dynamics Corporation program. On August 26, 2004, this Court granted the petition. Again, both the Rehabilitator's Verified Petition and the Order granting it specifically cited § 7428 in their opening paragraphs. Copies of the August 26, 2004 order and of the papers upon which it was granted are annexed as Exhibit F.

17.    Justice Lehner has also granted §7428 petitions involving reinsurance commutations in the estates of *other* insolvent insurers. For example, on January 12, 2004,

6

Justice Lehner approved a petition for approval of a Reinsurance Commutation and Release Agreement between the Liquidator of Cosmopolitan Mutual Insurance Company and the Illinois Special Rehabilitator of American Mutual Reinsurance Company ("AMRECO"). Again, both the Rehabilitator's Verified Petition and the Order granting it specifically cited § 7428 in their opening paragraphs. Copies of the January 12, 2004 order and of the papers upon which it was granted are annexed as Exhibit G.

18.     Other Justices as well routinely rule upon §7428 petitions for approval of reinsurance commutation agreements. *See* Order of Hon. William J. Davis, J.S.C. dated February 2, 2004 (approving Commutation Agreement between the Liquidator of Northumberland General Insurance Company (United States Branch) and Certain Underwriters at Lloyd's for $1,650,000) (Exhibit H hereto); Order of Hon. Ute Lali dated August 19, 2004 (approving Reinsurance Commutation and Release Agreement between the Liquidator of American Fidelity Fire Insurance Company and Insco Ltd. for $189,946) (Exhibit I hereto); Order of Hon. Michael D. Stallman, J.S.C. dated August 26, 2004 (approving Commutation Agreement between Liquidator of Midland Insurance Company and Uraguayan reinsurer Banco de Seguros del Estado for $77,735) (Exhibit J hereto); Order of Hon. Leland DeGrasse, J.S.C. dated September 7, 2004 (approving Commutation Agreement between Liquidator of Ideal Mutual Insurance Company and Uraguayan reinsurer Banco de Seguros del Estado for $1,672,265) (Exhibit K hereto). These are just examples.

19.     Of the parties that opposed the Rehabilitator's petition in this proceeding, only FIGI made the argument that Justice Lehner's February 2003 ruling constitutes law of the case and bars this Court from exercising its § 7428 jurisdiction. The other objectors urged the Court to disapprove Endorsement No. 3, acknowledging at least

7

implicitly the Court's jurisdiction and responsibility to decide the matter one way or the other. FIGI was not correct to impute to Justice Lehner a disavowal of jurisdiction over transactions falling under §7428. In fact, Justice Lehner's February 2003 ruling was no more than a demurral to the Rehabilitator's application for blanket ratification of the "voluminous" transactions set forth in his report. As evidenced by Justice Lehner's own subsequent approval orders in this proceeding, he clearly did not intend to renounce the Court's statutory jurisdiction to approve or disapprove of specific reinsurance commutations. He approved several of them, as other Justices and, indeed, this Court have routinely done.

20.     Moreover, as is detailed in the accompanying Affidavit of Ronald Labenski, Frontier secures significant financial advantages under the Third Endorsement, including the infusion of $45 million, debt relief in excess of $145 million and avoidance of over $9.5 million of interest accrual in 2004. I respectfully urge the Court to allow Frontier to avoid imminent liquidation, to receive the immediate financial benefits of the Third Endorsement, and, on the foundation of this endorsement, to frame a plan for rehabilitation.

21.     Except as set forth above, no prior application for this or similar relief has been made to this or any other Court.

8

WHEREFORE, the Rehabilitator respectfully requests that the Court issue an order: (i) permitting the Rehabilitator to renew and reargue the Petition for approval of the Third Endorsement and, upon such renewal and reargument, granting the Petition; and (ii) awarding such other and further relief as this Court deems just and appropriate.

Dated:      New York, New York
            April 4, 2005

                                    H. NEAL CONOLLY

9

EXHIBIT 4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SULLIVAN

_____

In the Matter of

The Rehabilitation of

FRONTIER INSURANCE COMPANY                    **DECISION/ORDER**

_____

Motion Return Date:  April 28, 2005
RJI No.: 52-22168-0303
Index No.: 1357/0303

APPEARANCES:        Frontier Insurance Company in Rehabilitation
                    195 Lake Louise Marie Road
                    Rock Hill, New York 12775-8000
                    Barton W. Bloom, Esq., of Counsel

                    Costigan & Company, P.C.
                    Attorneys for Howard Mills, Superintendent of Insurance
                     of the State of New York
                    305 Broadway, 7th Floor
                    New York, New York 10007
                    William F. Costigan, Esq., of Counsel

                    Wolf, Block, Schorr & Solis-Cohen, LLP
                    Attorneys for Euler Hermes Kreditversicherungs - AG
                    250 Park Avenue
                    New York, New York 10177
                    William J. Taylor, Esq., of Counsel

                    Anderson Kill & Olick, P.C.
                    Attorneys for Florida Asset Financing Corp., Jurupa Valley Spectrum,
                    LLC, Callon Petroleum Company, AJAS Inc., and DAVAR Inc.
                     [together the "Surety Creditors"]
                    11251 Avenue of the Americas
                    New York, New York 10020-1182
                    Mark Garbowski, Esq., of Counsel

                    Cokinos, Bosien & Young, Esqs.
                    Former Attorneys of Record for Frontier Insurance Company
                    1500 Woodson Tower
                    2919 Allen Parkway
                    Houston, Texas 77019
                    Charles W. Getman, Esq., of Counsel

Exhibit 4

33

Frontier Insurance Group, Inc.
146 Rockhill Drive
Rock Hill, New York 12775-7203
Suzanne R. Loughlin, Esq., of Counsel

Stroud & Welch, PLLC
Attorneys for the Special Deputy Receiver for Western Indemnity
  Insurance Company, in Receivership ["WIIC"]
11824 Jollyville Road, Suite 200
Austin, Texas 78759
Rachel Stroud, Esq., of Counsel

Marvin Newberg, Esq.
33 North Street
Monticello, New York 12701
  Of Counsel  to Stroud & Welch, PLLC

CLEMENTE, J:

The petitioner Superintendent of Insurance as Rehabilitator of Frontier Insurance Company [the

"Rehabilitator"] moves to renew and reargue his petition seeking an order ratifying and approving the

Rehabilitator's transactions with National Indemnity Insurance Company ["NICO"], a Berkshire

Hathaway subsidiary.

Opposing the application are the following: the Surety Companies, and Cokinos, Bosien &

Young.  Resolution Oversight Company, as Special Deputy Receiver for WIIC, has withdrawn its

objection to the Rehabilitator's motion.  Frontier Insurance Group, Inc. ["FIGI"]has withdrawn its

objection based on Western Indemnity's withdrawal.

**History**

Prior to rehabilitation, Frontier's management entered into two reinsurance agreements with

NICO which became effective July 1, 2000.  The primary agreement was an aggregate reinsurance

agreement whereby NICO reinsured covered liabilities for the years 1999 and prior.  Thereafter

Frontier entered into a modification of the aforesaid agreement designated as endorsement No. 1.  As

an adjunct to the aggregate reinsurance agreement, Frontier and NICO also entered into a novation

2

Exhibit 4
34

agreement concerning certain prior reinsurance agreements that Frontier had entered into with Centre Reinsurance ["Centre Re"] Company. The novation substituted NICO for Centre Re as Frontier's insurer. At the beginning of the rehabilitation, the Rehabilitator and NICO entered into endorsement No. 2 to the aggregate reinsurance agreement in order to obtain advances of reinsurance proceeds to address Frontier's cash crisis.

In or about September 2004, the Rehabilitator, through proposed endorsement No. 3, sought to change the aggregate reinsurance agreement with NICO, by adjusting and fixing the parties' future obligations as of December 31, 31, 2003. As part of its application, the Rehabilitator contended that the outstanding reinsurance cover of National Indemnity would no longer include surety business, and, in consideration thereof, $140 million of Frontier debt would be commuted and eliminated. The amount of remaining cover available to Frontier and Frontier Pacific would be reduced to the total amount of $225 million, with the Frontier Pacific sublimit remaining intact. In addition, Frontier Insurance Company would receive a payment of up to $50 million in cash, which would be available for surety reserves and other losses and cash needs.

In addition to submissions it received both favoring and opposing the application, the Court heard oral argument of the matter on December 14, 2004. By Decision and Order dated January 4, 2005, the Court denied petitioner's application on the grounds that it was governed by a prior ruling issued by the Hon. Edward H. Lehner, J.S.C., Supreme Court, New York County, wherein Justice Lehner rejected a similar application made by the Rehabilitator to ratify endorsement No. 2 to the NICO reinsurance agreement and other transactions.

**The Application to Renew and Reargue**

Pursuant to CPLR 2221(e)(2) and (3), a motion to renew "shall be based upon new facts not offered on the prior motion that would change the prior determination...and...shall contain reasonable

3

Exhibit 4
35

justification for the failure to present such facts on the prior motion." On the other hand, a motion for leave to reargue pursuant to CPLR 2221 is addressed to the sound discretion of the court and is properly granted upon a showing that the court overlooked or misapprehended the facts and/or the law or mistakenly arrived at its earlier decision.

Here, the Rehabilitator contends that of the parties that opposed the initial petition, only FIGI made the argument that Justice Lehner's February 2003 ruling constitutes the law of the case and bars this Court from exercising its jurisdiction under Insurance Law §7428. However, the Court concurs with the Rehabilitator that the argument that this Court lacks jurisdiction over this matter is unfounded. Insurance Law §7428 requires judicial approval of the Superintendent's proposal to "sell or otherwise dispose of all or any part of the real and personal property of an insurer against whom a proceeding has been brought under [article 74]." Rehabilitator properly argues that because Frontier's contractual right to receive reinsurance proceeds is personal property, its proposed disposition of that right – the partial commutation – is a disposition of personal property within the meaning the statute.

As a further basis for reargument and renewal, the Rehabilitator contends that unlike the petition presented to Justice Lehner for ratification, the instant petition does not seek ratification of "voluminous" transactions, but rather sought prior approval of a single transaction, to wit, the Third Endorsement to the Aggregate Insurance Agreement, which, by its terms, is contingent upon this Court's approval.

In addition, the Rehabilitator contends that no opponent of Endorsement No. 3 has even sought to demonstrate how Frontier can possibly avoid liquidation without the endorsement. Indeed, even the most stringent objections focus not on the potential death knell facing Frontier absent approval of the subject endorsement but rather on the insufficiency of the information contained in the petition (*see, e.g.* Surety Creditors' Memorandum of Law in Opposition, at 2-3). Moreover, WIIC, who did not

4

Exhibit 4
36

appear on the initial application (WIIC claims that although it was a party to the Novation Agreement

described in paragraphs 9-10 of the Rehabilitator's Petition, it received no notice of either the Petition

or the instant motion), filed objections to the instant motion based on its assertion that if Frontier were

allowed to enter into Endorsement No. 3, NICO would attempt to hold WIIC liable for the entire

amount of Frontier's financial obligations under the Novation Agreement.  Specifically, Paragraph 9 of

Endorsement No. 3 provides, as is relevant here that:

> "With respect to the Centre Re Funds Held balance at December 31,
> 2003, the Reinsurer agrees not collect this amount from Frontier as part
> of the $140 million of NICO balance forgiveness referenced above,
> effective January 1, 2004.  The Reinsurer agrees that it may only
> collect the remaining funds held balance from the other participants to
> the Centre Re Reinsurance Agreements and the Novation."

WIIC has since withdrawn its objections to the Rehabilitator's motion to renew and reargue.

According to the Rehabilitator, the proposed Third Endorsement features a partial commutation of

the Aggregate Reinsurance Agreement, reducing Frontier's reinsurance coverage under the Agreement

from a remaining limit of approximately $473 million to $225 million and excluding coverage of

surety claims.  In consideration of the limit reduction and surety exclusion, NICO agrees to expunge an

approximately $145 million balance in its favor and to pay approximately $45 million to the

Rehabilitator.

WIIC has resolved its concerns about the impact of Endorsement No. 3 upon them and the

subsidiaries of Frontier and, thus, has withdrawn its objections to the instant motion. Because of

WIIC's resolution of its concerns, FIGI no longer objects to the unconditional approval of

Endorsement No. 3.    The Court is of the view that the aforesaid constitutes new evidence.

Upon these circumstances, the Court finds adequate basis upon which to vacate its original

Decision and Order denying the petition and grant the Rehabilitator's motion.  The motion is granted

5

Exhibit 4
37

and the petition seeking approval for the Third Endorsement is granted.

This constitutes the Decision and Order of this Court. All papers, including the original copy of this Decision and Order, are being filed with the Office of the Sullivan County Clerk.

Dated: Monticello, New York
     July 28, 2005


ENTER:


_____
Hon. Nicholas A. Clemente, JSC


**Papers considered:**

Order to show cause, dated April 5, 2005, affirmation of H. Neal Conolly, dated April 4, 2005, with exhibits, the affidavit of Ronald Labenski, sworn to April 4, 2005, and supporting memorandum of law; opposing affirmation of Mark Garbowski, Esq., dated April 21, 2005, and memorandum of law, with exhibits; response of Euler Hermes Kreditversicherungs-AG, by William J. Taylor, Esq., dated April 20, 2005; opposing objection of Cokinos, Bosien & Young, Esqs., dated April 20, 2005, by Charles W. Getman, Esq.; motion for adjournment and/or objections to Rehabilitator's motion of Resolution Oversight Corporation, undated but received May 2, 2005, and objections of Resolution Oversight Corporation, undated but received May 31, 2005, by Marvin Newberg, Esq. (Of Counsel); Rehabilitator's reply memorandum of law, dated June 8, 2005, and reply affidavit of Francesca G. Bliss, sworn to June 8, 2005, with exhibits; affirmation of Suzanne R. Loughlin, Esq., dated May 27, 2005, and the notice of withdrawal of objection to Rehabilitator's motion to renew and reargue, dated July 13, 2005

6

Exhibit 4
38

EXHIBIT 5

1  **MUSICK, PEELER & GARRETT** LLP
   ATTORNEYS AT LAW
2     One Wilshire Boulevard, Suite 2000
      Los Angeles, California 90017-3383
      TELEPHONE 213-629-7612
3     FACSIMILE (213) 624-1376

4  Susan J. Field (State Bar No. 086200)
   s.field@mpglaw.com
   Richard S. Conn (State Bar No. 065513)
5  r.conn@mpglaw.com
   Barbora Pulmanova (State Bar No. 234028)
6  b.pulmanova@mpglaw.com

7  Attorneys for NATIONAL INDEMNITY COMPANY

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11 | STEVE POIZNER, INSURANCE         | Case No.  08 CV 772 L (POR)
   | COMMISSIONER OF THE STATE        |
12 | OF CALIFORNIA, in his capacity as| Assigned to the Hon. M. James Lorenz
   | Liquidator of Frontier Pacific Insurance | Dept. J.
13 | Company,                         |
                                      | **ANSWER OF NATIONAL**
14 |          Plaintiff,              | **INDEMNITY COMPANY TO**
                                      | **PLAINTIFF'S COMPLAINT**
15 |   vs.                            | **FOR DECLARATORY RELIEF**
16 | NATIONAL INDEMNITY               |
   | COMPANY, a Nebraska corporation; |
17 | and DOES 1 through 10,           |
18 |          Defendant.              |

19

20         Defendant National Indemnity Company, a Nebraska corporation,

21 ("NICO" or "Defendant") in answer to the Complaint of Plaintiff, Steve Poizner,

22 Insurance Commissioner of the State of California, in his capacity as Liquidator of

23 Frontier Pacific Insurance Company ("FPIC" or "Plaintiff"), admits, denies, and

24 alleges, as follows:

25         1.     In answer to the allegations of Paragraph 1, Defendant admits

26 that the Plaintiff's Compliant seeks declaratory relief for a determination that FPIC

27 has a right to recover monies allegedly owed by NICO pursuant to an indemnity

28 contract; admits that Plaintiff denies that its alleged claims are subject to any offset

585229.1

1   for monies that were previously owed to NICO by Frontier Insurance Company

2   ("Frontier"), FPIC's parent company; and denies that the sole ground for set off is as

3   alleged by Plaintiff, Plaintiff being independently obligated to pay the "Funds

4   Withheld Account" (also referred to herein as the "Centre Re Funds Held Balance")

5   to NICO under the Novation Agreement attached to the Complaint as Exhibit C.

6   Except as so admitted and alleged, NICO denies generally and specifically the

7   allegations of Paragraph 1.

8           2.      In answer to the allegations of Paragraph 2, NICO admits that

9   NICO and FPIC are parties to certain insurance contracts; admits that Frontier and

10  NICO entered into an amendment to one such reinsurance contract identified as

11  Endorsement No. 3; admits that, pursuant to Endorsement No. 3, NICO paid

12  Frontier $45 million and agreed not to enforce against Frontier its right to payment

13  of certain premiums due as of December 31, 2003 from Frontier and FPIC; denies

14  that Endorsement No. 3 constituted a compromise and release of any claims held by

15  NICO against FPIC; alleges that Endorsement No. 3 speaks for itself with respect to

16  its terms; admits that, by its terms, FPIC is not a party to Endorsement No. 3; and

17  denies that NICO bases its right of offset as against FPIC on Endorsement No. 3,

18  such right of offset being independently derived from the Novation Agreement,

19  attached to the Complaint as Exhibit C.  Except as so admitted and alleged, NICO

20  denies generally and specifically the allegations of Paragraph 2.

21          3.      In answer to the allegations of Paragraph 3, NICO admits that, at

22  times relevant to the Complaint, FPIC was a corporation existing under the laws of

23  the State of California and was licensed to transact the business of insurance in the

24  State of California; except as so admitted, NICO denies generally and specifically

25  the allegations of Paragraph 3.

26          4.      In answer to the allegations of Paragraph 4, NICO admits that, at

27  all times pertinent to the Complaint, FPIC was a wholly owned subsidiary of

28  Frontier, which was licensed to transact insurance in the State of New York and is

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

585229.1                                      2
                    ANSWER OF NATIONAL INDEMNITY COMPANY TO PLAINTIFF'S
                    COMPLAINT FOR DECLARATORY RELIEF          Exhibit 5
                                                             40

1 | currently under an Order of Rehabilitation in the proceeding entitled In the Matter of

2 | The Rehabilitation of Frontier Insurance Company, Supreme Court of the State of

3 | New York, County of Sullivan, Index No. 1357/03 ("Rehabilitation Court").

4 |    5. In answer to the allegations of Paragraph 5, NICO admits that,

5 | on November 30, 2001, Plaintiff Insurance Commissioner of the State of California

6 | was appointed the Liquidator of FPIC by the Superior Court for the County of

7 | San Diego for the State of California in the proceeding entitled Insurance

8 | Commissioner v. Frontier Pacific Insurance Company, Case No. GIC7740288.

9 |    6. In answer to the allegations of Paragraph 6, Defendant NICO

10 | admits that, at all times pertinent herein, it is and was a corporation with its principal

11 | place of business in Nebraska, and authorized to engage in and did engage in

12 | various classes of insurance business in the State of California.

13 |    7. In answer to the allegations of Paragraph 7, NICO alleges that it

14 | lacks information or belief sufficient to form a belief as to the truth of said

15 | allegations and based thereon denies each and every said allegation.

16 |    8. In answer to the allegations of Paragraph 8, NICO admits that,

17 | prior to the removal of this action from the Superior Court for the County of

18 | San Diego, State of California, to the Untied States District Court for the Southern

19 | District of California, the foresaid state court had, pursuant to Insurance Code

20 | Section 1058, jurisdiction to determine the claims asserted in the Complaint, since

21 | such claims affected the interest of FPIC and of the Liquidator.  Except as so

22 | admitted, NICO denies generally and specifically each and every said allegation.

23 |    9. In answer to the allegations of Paragraph 9, NICO admits that,

24 | on May 3, 1995 FPIC and Frontier entered into a Reinsurance Agreement with

25 | Centre Re Insurance Company of New York ("Centre Re"), entitled Co-insured

26 | Aggregate Excess Loss Reinsurance Agreement effective January 1, 1995 ("Centre

27 | Re Agreement"); alleges that such agreement, as attached to the Complaint as

28 | Exhibit A, speaks for itself as to its terms; and admits that a true and genuine copy

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

585229.1

3

ANSWER OF NATIONAL INDEMNITY COMPANY TO PLAINTIFF'S
COMPLAINT FOR DECLARATORY RELIEF

Exhibit 5
41

1  of the Centre Re Agreement is attached to the Complaint as Exhibit A. Except as so

2  alleged and admitted, NICO denies generally and specifically the allegations of

3  Paragraph 9.

4        10.    In answer to the allegations of Paragraph 10, NICO alleges that

5  the Centre Re Agreement speaks for itself with respect to its terms. Except as so

6  alleged, NICO denies generally and specifically each and every allegation in

7  Paragraph 10.

8        11.    In answer to the allegations of Paragraph 11, NICO states that it

9  lacks information or belief sufficient to form a belief as to the truth of the

10  allegations of Paragraph 11, and based thereon denies each and every said

11  allegation.

12        12.    In answer to the allegations of Paragraph 12, NICO admits that,

13  on July 15, 1998, Frontier, its subsidiaries, FPIC and United Capitol Insurance

14  Company ("United"), and its affiliate, Western Indemnity Insurance Company

15  ("Western") entered into a Reinsurance Agreement with Zurich Re entitled

16  Aggregate Excess Loss Reinsurance Agreement ("Zurich Re Agreement") (together

17  with Centre Re Agreement, the "Reinsurance Agreements"); alleges that the Zurich

18  Re Agreement, attached to the Complaint as Exhibit B, speaks for itself with respect

19  to its terms; admits that a true and genuine copy of the Zurich Re Agreement is

20  attached to the Complaint as Exhibit B; and except as so admitted and alleged,

21  denies generally and specifically the allegations of Paragraph 12.

22        13.    In answer to the allegations of Paragraph 13, NICO alleges that

23  the Zurich Re Agreement speaks for itself with respect to its terms. Except as so

24  alleged, NICO denies generally and specifically the allegations of Paragraph 13.

25        14.    In answer to the allegations of Paragraph 14, NICO admits that,

26  on December 21, 2000, FPIC, Frontier, United and Western entered into a Novation

27  Agreement with Zurich Re and NICO with an effective date of July 1, 2000; and

28  admits that a true and genuine copy of the Novation Agreement is attached to the

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

585229.1                                        4
ANSWER OF NATIONAL INDEMNITY COMPANY TO PLAINTIFF'S
COMPLAINT FOR DECLARATORY RELIEF                    Exhibit 5
                                                        42

1    Complaint as Exhibit C.

2         15.    In answer to the allegations of Paragraph 15, NICO alleges that

3    the Novation Agreement speaks for itself with respect to its terms.  Except as so

4    alleged, NICO denies generally and specifically the allegations of Paragraph 15.

5         16.    In answer to the allegations of Paragraph 16, NICO admits that,

6    in partial consideration for the Novation Agreement, NICO received $68,200,000

7    from Zurich Re.  Except as so admitted, NICO denies generally and specifically the

8    allegations of Paragraph 16.

9         17.    In answer to the allegations of Paragraph 17, NICO admits that,

10   on September 27, 2000, Frontier entered into an Aggregate Reinsurance Agreement

11   with NICO with an effective date of July 1, 2000 (the "NICO Agreement").  NICO

12   alleges that the NICO Agreement, a true and genuine copy which is attached to the

13   Complaint as Exhibit D, speaks for itself with respect to its terms.  Except as so

14   admitted and alleged, NICO denies generally and specifically each and every

15   allegation of Paragraph 17.

16        18.    In answer to the allegations of Paragraph 18, NICO admits that,

17   on January 5, 2001, Frontier, FPIC and NICO entered into an agreement amending

18   the NICO Agreement, identified as Endorsement No. 1.  NICO alleges that

19   Endorsement No. 1 speaks for itself with respect to its terms, and admits that a true

20   and genuine copy of Endorsement No. 1 is attached to the Complaint as Exhibit E.

21   Except as so admitted and alleged, NICO denies generally and specifically each and

22   every allegation of Paragraph 18.

23        19.    In answer to the allegations of Paragraph 19, NICO admits that,

24   in partial consideration for including FPIC as an additional named insured under the

25   NICO Agreement, pursuant to Paragraph 3 of Endorsement No. 1, Frontier and/or

26   FPIC paid NICO a premium of $21 million.  Except as so admitted, NICO denies

27   each and every other allegation contained in said paragraph.

28        20.    In answer to the allegations of Paragraph 20, NICO admits that,

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

585229.1                                                    5
                 ANSWER OF NATIONAL INDEMNITY COMPANY TO PLAINTIFF'S          Exhibit 5
                      COMPLAINT FOR DECLARATORY RELIEF                             43

1  on August 27, 2001, Frontier was taken into Temporary Rehabilitation by the

2  Superintendent of Insurance of the State of New York, and on October 15, 2001 an

3  Order of Rehabilitation was entered by the Supreme Court of the State of

4  New York, appointing the Superintendent of Insurance of the State of New York as

5  Rehabilitator, and further admits that a true and genuine copy of the Order of

6  Rehabilitation is attached to the Complaint as Exhibit F.

7          21.    In answer to the allegations of Paragraph 21, NICO alleges that,

8  at the time that the Order of Rehabilitation was entered, Frontier, FPIC, United and

9  Western jointly and severally owed the Funds Withheld Account in the amount of

10 approximately $80,000,000 to NICO as premium under the Novation Agreement.

11 Except as so admitted and alleged, NICO denies generally and specifically the

12 allegations of Paragraph 21.

13         22.    In answer to the allegations of Paragraph 22, NICO admits that,

14 on or about December 21, 2001 Frontier and NICO entered into Endorsement No. 2,

15 a true and genuine copy which is attached to the Complaint as Exhibit G.  NICO

16 alleges that Endorsement No. 2 speaks for itself with respect to its terms. Except as

17 so admitted and alleged, NICO denies generally and specifically each and every

18 allegation set forth in Paragraph 22.

19         23.    In answer to the allegations of Paragraph 23, NICO admits that,

20 by the express terms of Endorsement No. 2, FPIC is not a party thereto.  Except as

21 so admitted, NICO denies generally and specifically each and every allegation set

22 forth in Paragraph 23.

23         24.    In answer to the allegations of Paragraph 24, NICO admits that,

24 pursuant to Endorsement No. 2, NICO made certain payments to Frontier for which

25 Frontier was obligated to reimburse NICO.  Except as so admitted, NICO denies

26 generally and specifically each and every allegation set forth in Paragraph 24.

27         25.    In answer to the allegations of Paragraph 25, NICO admits that

28 Frontier and NICO entered into an Endorsement No. 3 to the NICO Agreement with

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

585229.1                                          6
ANSWER OF NATIONAL INDEMNITY COMPANY TO PLAINTIFF'S
COMPLAINT FOR DECLARATORY RELIEF                    Exhibit 5
                                                    44

1  an effective date of January 1, 2004, and further admits that a true and genuine copy

2  of Endorsement No. 3 is attached to the Complaint as Exhibit H.

3       26.    In answer to the allegations of Paragraph 26, NICO alleges that

4  Endorsement No. 3 speaks for itself with respect to its terms; alleges that FPIC was

5  not a third-party beneficiary of Endorsement No. 3 or otherwise released by its

6  terms; and, except as so alleged, denies generally and specifically each and every

7  allegation set forth in Paragraph 26.

8       27.    In answer to the allegations of Paragraph 27, NICO admits that

9  the unpaid Centre Re Funds Held balance owed by Frontier, FPIC and United to

10  NICO at the time Endorsement No. 3 was executed was approximately $40 million;

11  alleges that FPIC was jointly and severely liable for payment of the Centre Re Funds

12  Held balance pursuant of the terms of the Novation Agreement; and except as so

13  alleged and admitted, denies generally and specifically each and every allegation of

14  Paragraph 27.

15       28.    In answer to the allegations of Paragraph 28, NICO denies that,

16  pursuant to Endorsement No. 3, NICO compromised and released NICO's claim

17  against FPIC to fund the premium deficiency in the Centre Re Funds Held as of

18  December 31, 2003; alleges that Endorsement No. 3 was jointly negotiated by NICO

19  and Frontier; alleges that Endorsement No. 3 speaks for itself with respect to its

20  terms; and, except as so admitted and alleged, denies generally and specifically each

21  and every allegation set forth in Paragraph 28.

22       29.    In answer to the allegations of Paragraph 29, NICO denies that

23  the quoted language discharged or relieved FPIC from its obligations to fund

24  premium amounts owed under the Reinsurance Agreements and Novation

25  Agreement; admits that Paragraph 9 of Endorsement No. 3 is as quoted; and, except

26  as so alleged and admitted, denies generally and specifically each and every other

27  allegation of Paragraph 29.

28

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

585229.1

7

ANSWER OF NATIONAL INDEMNITY COMPANY TO PLAINTIFF'S
COMPLAINT FOR DECLARATORY RELIEF

Exhibit 5
45

1        30.   In answer to the allegations of Paragraph 30, NICO admits that,

2    by its terms, FPIC is not a party to Endorsement No. 3. Except as so admitted,

3    NICO denies generally and specifically each and every allegation of Paragraph 30.

4        31.   In answer to the allegations of Paragraph 31, NICO admits that,

5    on or about July 7, 2004, Frontier submitted its Petition seeking the Rehabilitation

6    Court's approval of Endorsement No. 3 and that a true and correct copy of said

7    Petition is attached to the complaint as Exhibit I.

8        32.   In answer to the allegations of Paragraph 32, NICO alleges that it

9    lacks information or belief sufficient to admit or deny the truth of said allegations,

10   and on said grounds denies each and every said allegation.

11       33.   In answer to the allegations of Paragraph 33, NICO alleges that it

12   lacks information or belief sufficient to admit or deny the truth of said allegations,

13   and on this ground denies each and every said allegation.

14       34.   In answer to the allegations of Paragraph 34, NICO admits that a

15   true and genuine copy of Neal Conolly's Affirmation in Support of Rehabilator's

16   Motion to Renew and Reargue is attached to the Complaint as Exhibit K and alleges

17   that said pleadings speaks for itself with respect to its terms; except as so alleged,

18   NICO lacks information sufficient to admit or deny the truth of the allegations of

19   Paragraph 34, and on this ground denies said allegations.

20       35.   In answer to the allegations of Paragraph 35, NICO admits that it

21   filed no objections to the Affidavit of Ron Labenski or Neal Conolly's Affirmation

22   in Support of Rehabilator's Motion to Renew and Reargue.

23       36.   In answer to the allegations of Paragraph 36, NICO admits that

24   Endorsement No. 3 was approved by the Rehabilitation Court on July 28, 2005 and

25   admits that a true and genuine copy of the Rehabilitation Court's Order approving

26   Endorsement No. 3 is attached to the Complaint as Exhibit L.

27       37.   In answer to the allegations of Paragraph 37, NICO denies that

28   Endorsement No. 3 has been fully performed by NICO and Frontier and further

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

585229.1

8

ANSWER OF NATIONAL INDEMNITY COMPANY TO PLAINTIFF'S
COMPLAINT FOR DECLARATORY RELIEF

Exhibit 5
46

1  denies that FPIC's obligations under the Reinsurance Agreements and the Novation

2  Agreement for payment of premium has been fully discharged or satisfied.

3         38.    In answer to the allegations of Paragraph 38, NICO admits said

4  allegations.

5         39.    In answer to the allegations of Paragraph 39, NICO alleges that it

6  lacks information or beliefs sufficient to admit or deny the truth of said allegations,

7  and on said ground denies said allegations.

8         40.    In answer to the allegations of Paragraph 40, NICO admits that,

9  at times from 2002 through 2005 representatives of the Liquidator, Frontier and

10  NICO met regarding updating of the FPIC loss data and reconciling reinsurance

11  cessions; except as so admitted, NICO denies generally and specifically the

12  allegations of Paragraph 40.

13         41.    In answer to the allegations of Paragraph 41, NICO admits that,

14  in early 2005, it was agreed by NICO, Frontier and the Liquidator that the

15  Liquidator would await a ruling on Frontier's Motion for Approval of Endorsement

16  No. 3 before submitting a reconciled billing for losses ceded to NICO.

17         42.    In answer to the allegations of Paragraph 42, NICO admits that,

18  on or about September 20, 2005 Frontier sent NICO and the Liquidator FPIC's bill

19  in the principal amount of $4,800,083.90, a true and genuine copy of which is

20  attached to the Complaint as Exhibit M without supporting spreadsheets; NICO

21  alleges that it lacks information or beliefs sufficient to admit or deny the truth of the

22  remaining allegations of Paragraph 42, and based thereon denies generally and

23  specifically each and every said allegation.

24         43.    In answer to the allegations of Paragraph 43, NICO admits

25  receiving billings as reflected in Exhibit M to the Complaint and admits approval of

26  Endorsement No. 3 by the Rehabilitation Court; admits that it refuses to pay any

27  amount on billings from FPIC, because FPIC is still obligated to NICO for payment

28  of the Funds Withheld Account as premium under the Novation Agreement; alleges

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

585229.1

9

ANSWER OF NATIONAL INDEMNITY COMPANY TO PLAINTIFF'S
COMPLAINT FOR DECLARATORY RELIEF

Exhibit 5

47

1    that said indebtedness has not been released or discharged pursuant to Endorsement

2    No. 3; and except as so admitted and alleged, denies generally and specifically each

3    and every allegation set forth in Paragraph 43.

4            44.    In answer to the allegations of Paragraph 44, NICO denies that it

5    has advanced contentions as described; denies that it has compromised and released

6    FPIC from any liability for premiums under the Novation Agreement; alleges that

7    NICO has offsets based on premium owed under the Novation Agreement (the

8    Centre Re Fund Held Balance due at December 31, 2003); and except as so admitted

9    and alleged, denies generally and specifically the allegations of Paragraph 44.

10           45.    In answer to the allegations of Paragraph 45, NICO incorporates

11   by reference its answer to Paragraphs 1 through 43.

12           46.    In answer to the allegations of Paragraph 46, NICO admits that

13   an actual controversy has arisen and now exists between the Liquidator and NICO

14   concerning their respective rights and duties; admits that the Liquidator contends

15   that FPIC is not a party to Endorsement No. 3 and is not bound by any obligations

16   created by Endorsement No. 3; denies that NICO contends that Endorsement No. 3

17   is controlling for purposes of determining the rights of NICO against FPIC; and

18   alleges that the rights of set off asserted by NICO arise under the Novation

19   Agreement, pursuant to which, as a Reinsured, FPIC is jointly and severely liable

20   with Frontier to "pay [NICO] the Funds Withheld Account for all Accident Years in

21   respect of the Reinsurance Agreement effective January 1, 1995." Except as so

22   admitted and alleged, NICO denies generally and specifically each and every said

23   allegation.

24           47.    In answer to the allegations of Paragraph 47, NICO admits that

25   Plaintiff seeks a judicial determination and declaration that he is not bound by

26   obligations that Frontier and NICO allegedly attempt to impose upon FPIC pursuant

27   to Endorsement No. 3; however, NICO alleges that the obligations it seeks to

28   impose arise under the Novation Agreement, rather than Endorsement No. 3.

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

585229.1                                          10
                    ANSWER OF NATIONAL INDEMNITY COMPANY TO PLAINTIFF'S          Exhibit 5
                           COMPLAINT FOR DECLARATORY RELIEF                          48

1    48.    In answer to the allegations of Paragraph 48, NICO incorporates

2 by reference its answers to Paragraphs 1 through 46.

3    49.    In answer to the allegations of Paragraph 49, NICO admits that

4 an actual controversy has arisen and now exists between the Liquidator and NICO

5 concerning their respective rights and duties under the NICO Agreement; admit that

6 the Liquidator contends that Endorsement No. 3 discharges all obligations for any

7 deficiencies in premiums due from FPIC to NICO through December 31, 2003

8 under the Novation Agreement; deny that any claims of NICO against FPIC for

9 premium deficiencies owed as of December 31, 2003 were compromised and

10 released pursuant to Endorsement No. 3 or otherwise; alleges that Frontier has

11 consented to assertion of offsets against FPIC based on premium deficiencies owed

12 as of December 31, 2003 by FPIC under the Novation Agreement; and further

13 alleges that by virtue of said premium deficiencies, NICO is entitled to offset the

14 Centre Re Funds Held Balance against amounts that otherwise might be claimed

15 owing by FPIC.  Except as so admitted and alleged, NICO denies generally and

16 specifically the allegations of Paragraph 49.

17    50.    In answer to the allegations of Paragraph 50, NICO alleges that it

18 lacks information or belief sufficient to admit or deny the truth of the allegations as

19 to the contentions of Plaintiff, and based thereon denies said allegations; NICO

20 further denies that Endorsement No. 3 has effected any accord and satisfaction of

21 any obligation owed by FPIC; alleges that approximately $40 million in premium

22 obligations remain due, owing and unpaid by FPIC to NICO under the Novation

23 Agreement; and, except as so admitted and alleged, deny generally and specifically

24 the allegations of Paragraph 50.

25    51.    In answer to the allegations of Paragraph 51, NICO incorporates

26 by reference its answers to Paragraphs 1 through 49.

27    52.    In answer to the allegations of Paragraph 52, NICO admits that

28 an actual controversy has arisen and now exist between the Commissioner and

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

585229.1                              11

ANSWER OF NATIONAL INDEMNITY COMPANY TO PLAINTIFF'S
COMPLAINT FOR DECLARATORY RELIEF                    Exhibit 5
                                                        49

1  NICO concerning their respective rights and duties; admits that NICO asserts the

2  right to setoff monies that it owes to FPIC against monies due to NICO under the

3  Novation Agreement from FPIC; denies that FPIC has been discharged of any

4  obligations by Endorsement No. 3; and denies that any setoff asserted by NICO

5  violates Insurance Code Section 1031.  Except as so admitted and alleged, NICO

6  denies generally and specifically each and every allegation of Paragraph 52.

7         53.  In answer to the allegations of Paragraph 53, NICO lacks

8  information or beliefs sufficient to admit or deny the truth of said allegations, and

9  based hereon denies said allegations.

10  FIRST AFFIRMATIVE DEFENSE

11  (Compulsory Arbitration)

12         54.  Pursuant to the provisions for binding arbitration incorporated in

13  the Reinsurance Agreements and the NICO Agreement, Plaintiff is obligated to

14  submit the pending controversy to arbitration, as provided in said agreements.

15  SECOND AFFIRMATIVE DEFENSE

16  (Failure to Join Indispensable Party)

17         55.  Plaintiff has failed to join an indispensable party, to wit Frontier

18  Insurance Company and/or its legal representative, which joinder is necessary

19  insofar as the party claims an interest in or relating to the subject of the action and is

20  so situated that the disposition of the action in the person's absence may, as a

21  practical matter, impair or impede the person's ability to protect that interest.

22  THIRD AFFIRMATIVE DEFENSE

23  (Reformation)

24         56.  NICO denies and contests that Endorsement No. 3 by its terms

25  effects a release of FPIC or a satisfaction of any obligations owed by FPIC pursuant

26  to the Reinsurance Agreements or the Novation Agreement.  However, if and to the

27  extent Endorsement No. 3 is susceptible to such construction, said agreement should

28  be reformed to reflect to true intent of the parties, to wit, that FPIC shall remain

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

585229.1

12

ANSWER OF NATIONAL INDEMNITY COMPANY TO PLAINTIFF'S
COMPLAINT FOR DECLARATORY RELIEF

Exhibit 5
50

1  liable for the Withheld Fund Balance Due under the Reinsurance Agreements and

2  the Novation Agreement.

3  <u>FOURTH AFFIRMATIVE DEFENSE</u>

4  (Estoppel)

5  57.  Endorsement No. 3 on its face reflects an intention that,

6  notwithstanding the agreement of NICO to forego collection of the Withheld Funds

7  Balance Due from Frontier, FPIC would continue subject to liability for said

8  amount, which liability, subject to the consent of Frontier, might be enforced against

9  FPIC.  FPIC's failure to object to Endorsement No 3 while approval of the

10  endorsement was pending before the Rehabilitation Court estops FPIC from now

11  contending that it has been released or discharged.

12  <u>FIFTH AFFIRMATIVE DEFENSE</u>

13  (Waiver)

14  58.  By failing to object to Endorsement No. 3 when it was pending

15  approval by the New York Rehabilitation Court, FPIC waived its right to assert that

16  it had been released or that its obligations have been satisfied.

17  <u>SIXTH AFFIRMATIVE DEFENSE</u>

18  (Lack of Consideration)

19  59.  FPIC has provided no consideration for its alleged release or for

20  alleged satisfaction of its indebtedness.

21  <u>SEVENTH AFFIRMATIVE DEFENSE</u>

22  (Statute of Frauds)

23  60.  The liability of FPIC under the Novation Agreement may not be

24  altered except by means of a writing executed on behalf of NICO.

25  ///

26  ///

27  ///

28  ///

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

585229.1

13

ANSWER OF NATIONAL INDEMNITY COMPANY TO PLAINTIFF'S
COMPLAINT FOR DECLARATORY RELIEF

Exhibit 5
51

<u>PRAYER</u>

Wherefore, NICO prays that the declaration of rights and duties sought by Plaintiff be denied by the Court, that NICO's rights and FPIC's duties as asserted herein be affirmed and declared; for costs of suit; and for such other and further relief as the Court may deem just.

DATED: May __5__, 2008

MUSICK, PEELER & GARRETT LLP

By: _____
Richard S. Conn
Attorneys for NATIONAL INDEMNITY
COMPANY

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

585229.1

14

ANSWER OF NATIONAL INDEMNITY COMPANY TO PLAINTIFF'S
COMPLAINT FOR DECLARATORY RELIEF

Exhibit 5
52

1    **PROOF OF SERVICE**

2    STATE OF CALIFORNIA
     COUNTY OF LOS ANGELES

3

        I am employed in the County of Los Angeles, State of California.  I am over
4    the age of 18 and not a party to the within entitled action; my business address is
     One Wilshire Boulevard, Suite 2000, Los Angeles, California 90017-3383.

5

     On May 5, 2008, I served the foregoing document(s) described as **ANSWER OF**
6    **NATIONAL INDEMNITY COMPANY TO PLAINTIFF'S COMPLAINT**
     **FOR DECLARATORY RELIEF** on the interested parties in this action by placing
7    a copy thereof enclosed in a sealed envelope addressed as follows:

8        **See Attached List**

9    ☒    **BY MAIL.**  I caused such envelope with postage thereon fully prepaid to be
          placed in the U.S. Mail at Los Angeles, California.  I am "readily familiar"
10        with the firm's practice of collection and processing correspondence for
          mailing.  Under that practice, it would be deposited with the U.S. postal
11        service on that same day with postage thereon fully prepaid at Los Angeles,
          California in the ordinary course of business.  I am aware that on motion of
12        the party served, service is presumed invalid if postal cancellation date or
          postage meter date is more than one day after date of deposit for mailing in
13        affidavit.

14   ☒    **BY ELECTRONIC MAIL OR ELECTRONIC TRANSMISSION.**  Based
          upon the Court's order for mandatory e-filing, I provided the documents listed
15        above electronically to the Court's website and thereon to those parties on the
          Service List maintained by that website by submitting an electronic version of
16        the documents to the Court's website.  The documents are deemed filed and
          served on the date that they were uploaded to the Court's website.

17
     ☐    **BY FACSIMILE TRANSMISSION.**  I caused such document to be
18        transmitted to the addressee(s) facsimile number(s) noted herein.  The
          facsimile machine used complies with Rule 2003 and no error was reported
19        by the machine.  Pursuant to Rule 2008(e), I caused the machine to print a
          transmission record of the transmission, a copy of which is attached to this
20        declaration.

21        Executed on May 5, 2008, at Los Angeles, California.

22   ☐    **(State)**    I declare under penalty of perjury under the laws of the State of
                         California that the foregoing is true and correct.
23
     ☒    **(Federal)**  I declare that I am employed in the office of a member of the
24                       bar of this Court at whose direction the service was made.  I
                         declare under penalty of perjury under the laws of the United
25                       States of America that the foregoing is true and correct.

26

27                            _Kathleen Slevcove_____
                              Kathleen Slevcove
28

**Exhibit 5**
53

1

## SERVICE LIST

2

EDMUND G. BROWN, JR.
Attorney General of the State of
3   California
W. DEAN FREEMAN
4   Supervising Deputy Attorney General
DIANE SPENCER SHAW
5   LISA W. CHAO
Deputy Attorneys General
6   300 South Spring Street, Suite 1702
Los Angeles, California 90013

Attorneys for Plaintiff Steve Poizner,
Insurance Commissioner of the State of
California in his capacity as Liquidator
of Frontier Pacific Insurance Company

7

Telephone: (213) 897-2486
8   Fax: (213) 897-5775

9   LAZLO KOMJATHY, JR.
Department of Insurance
10  45 Fremont Street, 24th Floor
San Francisco, California 94105

Attorneys for Plaintiff Steve Poizner,
Insurance Commissioner of the State of
California in his capacity as Liquidator
of Frontier Pacific Insurance Company

11

Telephone: (415) 538-4413

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

584492.1

2

Exhibit 5
54